[Crim. No. 23031. Nov. 8, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR MANUEL AVALOS, Defendant and Appellant.

218

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Steffan Imhoff, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F.

Katz and Paul C. Ament, Deputy Attorneys General, for Plaintiff and Respondent.

Robert H. Philibosian, District Attorney (Los Angeles), Harry B. Sondheim and Richard W. Gerry, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**REYNOSO, J.**—Following a jury trial the Superior Court of Ventura County entered a judgment convicting Arthur Manuel Avalos of murder in the second degree with use of a firearm, and of two counts of assault with a deadly weapon, both involving use of a firearm and infliction of great bodily injury.

The primary issue presented by this appeal is whether the trial court erred when it (1) instructed the jury it could return a verdict of murder without specifying the degree if the jurors were unable to reach a unanimous verdict upon the question of degree and (2) thereafter deemed the conviction to be second degree murder pursuant to Penal Code section 1157.[1]

The basis of the trial court's action was an opinion of the Court of Appeal, *Stalcup* v. *Superior Court* (1972) 24 Cal.App.3d 932 [101 Cal.Rptr. 467], which the trial court was unaware had been disapproved by this court. In *People* v. *Dixon* (1979) 24 Cal.3d 43 [154 Cal.Rptr. 236, 592 P.2d 752] we held that section 1157 was not intended to apply to cases in which the jury does not fix the degree of a crime because it cannot reach a unanimous verdict on that issue. The court's instruction to the jury was clearly erroneous under *Dixon*.

However, the record shows that the court was led into error by counsel for both the People and the defense, and that the defense took full advantage of the tactical benefit made available by the court's error. Thus we conclude that defendant cannot use this error to gain a reversal of his conviction on this appeal. Since none of defendant's other contentions demonstrate prejudicial error, we affirm his conviction.

---

[1] Penal Code section 1157 provides: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

All statutory references are to the Penal Code unless otherwise noted.

The charges arose from a New Year's shooting incident on December 31, 1980. A large crowd of young people had gathered at the Island Plaza Shopping Center to celebrate the New Year. The crowd was a bit rowdy—drinking beer, setting off firecrackers, reportedly shooting guns into the air. The traffic along Saviers Road, adjacent to the shopping center, cruised bumper to bumper.

The celebration was disrupted just after midnight, when shots were fired by a passenger of a white four-door car that had pulled into the parking lot. Three young men were hit by the gunfire; one of them was fatally wounded.

Two eyewitnesses identified defendant as the person who fired a small handgun into the crowd. Both witnesses testified that as the car approached the crowd it slowed, and the young man in the right front passenger seat pointed a gun out the window and fired several times.

One witness was acquainted with defendant. Although he had observed the assailant only for a "flash," he selected defendant's photo from a photographic lineup conducted several hours after the incident, and also positively identified defendant at trial.

The second witness testified that she had seen the assailant for approximately 10 seconds. She selected defendant's photograph as one of two which looked like the shooter in two separate arrays of photographs on January 3. On March 25 she identified defendant at an in-person lineup conducted in the Ventura County jail. She also positively identified defendant at trial.

Based on information from eyewitnesses, police officers obtained warrants to arrest defendant and to search his home for the murder weapon and ammunition. They went to defendant's house at 9:20 a.m. on January 1. They found defendant lying on a couch and arrested him. Their search turned up a .25 caliber cartridge and a .22 caliber spent casing.

Reuben Rodriguez, defendant's uncle, was present when the arrest and search occurred. When told by police they were looking for a gun, he volunteered that he had found a gun and directed them to a zippered bag which belonged to him. Inside the bag officers found a .22 caliber automatic handgun and a clip loaded with .22 caliber ammunition. Subsequent ballistics tests showed the gun to be the murder weapon. Rodriguez testified at trial that he had found the gun lying on the front lawn of defendant's house sometime around midnight of December 31.

Defendant was charged in five counts. Count I accused him of committing murder in violation of section 187. Counts II and IV alleged defendant had

attempted to murder the two surviving victims. Counts III and V alleged as alternatives to II and IV that defendant had committed assault with a deadly weapon upon the surviving victims. Each count included an allegation that defendant had personally used a firearm and counts II through V included allegations that he had intentionally inflicted great bodily injury on the victims.

Pretrial motions to relieve the public defender, to exclude the identification testimony of the two eyewitnesses, and to suppress a statement made by defendant to the police were denied. Defendant's statement was not offered in evidence and defendant elected not to testify in his own defense. The jury was instructed on first and second degree murder, on express and implied malice and on premeditation and deliberation.

The jury returned verdicts finding defendant guilty of murder in violation of section 187, without specifying a degree and finding that he had personally used a firearm. The jury further found defendant guilty of two counts of assault with a deadly weapon and found the allegations he personally used a firearm and inflicted great bodily injury in both counts to be true.

The trial court deemed the murder conviction to be of the second degree and sentenced defendant to state prison. The court found the first assault to warrant the upper base term and imposition of the enhancement for great bodily injury (a total of seven years), ordered the term for the second assault with great bodily injury to be consecutive (a total of two additional years) and ordered both of these terms to be served consecutively to the term of seventeen years to life imposed for the murder conviction and firearm use.

I

Defendant's primary claim of error involves the jury instructions. After deliberating for a full day the jury requested further instruction on the intent element of first degree murder and was instructed to reread specified portions of the instructions. The record shows that on the following morning, May 1, 1981, the court convened defendant, both counsel and all members of the jury in order to give some further answer to a second question which had been submitted the previous evening. The jury had inquired whether if they had determined that defendant was guilty of murder but disagreed upon the degree, they would have reached a verdict of guilty of second degree murder or no verdict at all. The jury further indicated that it was "unable to agree unanimously on which degree of murder the defendant is guilty of."

The record indicates that the court and both counsel had on the previous evening discussed the problem and agreed the jury should be instructed to

reexamine two standard instructions. Those were the instructions that the jury must reach unanimous agreement on degree and that they should give the defendant the benefit of any reasonable doubt on degree by returning a verdict of second degree. (CALJIC Nos. 8.74 (1976 rev.) and 8.71 (1979 rev.).) The record does not, however, include a transcription of those conversations.

On May 1 the court stated it thought that rereading the prior instructions had not adequately answered the jurors' questions. Without any comment on the record by either counsel, the court then instructed the jurors that they might return a verdict as to those portions of the murder verdict upon which they unanimously agreed: "That is to say, if you were able to agree on the first part that the defendant is guilty of murder, but could not agree as to the second question, that is degree, or could not agree as to the third question, the use of a firearm, the procedure for you to follow would be to complete that portion of the verdict upon which you unanimously agree. And then as to a portion where you can't agree, by an arrow or some means so that is perfectly clear which portion you can't agree, you reflect on the verdict that you can't agree." The court then offered to provide separate verdict forms for these three possible findings. The foreman accepted the forms and the jury resumed deliberations. At this point the prosecutor asked to place in the record that the legal basis for the court's decision was Penal Code section 1157, as discussed in Witkin's treatise on California Criminal Procedure, sections 538 and 547. The court provided the additional citation to *Stalcup* v. *Superior Court* (1972) 24 Cal.App.3d 932 [101 Cal.Rptr. 467], which the court said "would seem to be on all fours." Defense counsel said nothing on the record at this point.

Later that day the jury returned with its verdicts. The panel had unanimously found defendant guilty of two counts of assault with a deadly weapon and found the allegations that he personally used a firearm and inflicted great bodily injury in both counts to be true. As to the murder charge, the jury had reached unanimous decisions finding defendant guilty of murder and finding that he had personally used a firearm in committing the murder. On the issue of the degree of murder, however, the jury was divided seven to five. The foreman stated that further deliberations were unlikely to produce a unanimous answer to the question of degree and that he believed the jury was hopelessly deadlocked. The court asked for show of hands of the other jurors and all agreed that further deliberations would be futile. The court then took "the verdicts that were reached." Both counsel declined polling of the jury. The court ordered the verdicts entered, ordered a presentence report and scheduled a time for pronouncement of judgment.

At sentencing defense counsel disputed many facets of the probation report. He argued against imposition of the weapons use enhancements and

asked that the court consider sentencing defendant to the Youth Authority rather than prison. In the alternative counsel urged the court to make the terms for assault concurrent to the indeterminate term for murder. During his argument counsel emphasized that defendant had not been convicted of premeditated murder and stated: ". . . and though the Court hasn't—hasn't made a final ruling as to the degree of the homicide I think that that is something that we should take up later that it would—to make sure that it's second degree . . . ."

On this appeal, defendant contends for the first time that the trial court committed error when it told the jury that it might return a verdict which did not specify the degree of murder and then applied section 1157 to fix the degree at second. (*People* v. *Dixon, supra,* 24 Cal.3d 43.)

The Attorney General argues that defendant is barred from obtaining a reversal of his conviction on appeal by his acquiescence in the instruction, receipt of the verdict, entry of judgment and sentencing.

The Attorney General also urges that *Dixon* does not require reversal of defendant's conviction. The Attorney General claims that this court's rejection of the argument that the trial courts are *required* to apply section 1157 where the jury is deadlocked on the degree of an offense does not necessarily imply that the trial courts *may not* apply section 1157. Fixing the offense at second degree murder is asserted to resolve the issue in defendant's favor. Since the People agreed to this resolution, the Attorney General argues the verdict is valid and defendant is in no position to complain.

The Attorney General's interpretation contradicts the clear language of our decision in *Dixon.* We decline the invitation to overturn or restrict the holding of that case.

## II

Section 1157 provides in pertinent part that: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury . . . must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury . . . to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

In *Stalcup* v. *Superior Court, supra,* 24 Cal.App.3d 932 the jury was unable to reach a unanimous decision on the degree but informed the trial court that it had agreed the defendant was guilty of murder. The trial court declared a mistrial and the defendant sought a writ of mandate or prohibition

to vacate this order. The Court of Appeal granted the writ and ordered the trial court to set aside its order of mistrial and enter a judgment of conviction of murder in the second degree. The appellate court held that the jury had returned a unanimous verdict of murder to which the trial court should have applied section 1157.

In *People* v. *Dixon, supra,* 24 Cal.3d 43 a defendant convicted of first degree murder claimed the trial court erred by failing to instruct according to *Stalcup* when, after two and one-half days of deliberation, the jury asked whether it had to reach a unanimous verdict on the degree of the murder. On the fourth day, after the court instructed they must reach unanimity, the jury returned a verdict of first degree murder. Defendant urged the court was required to inform the jury that "upon their failure to reach unanimity on the question of degree, a verdict of second degree would follow as a matter of law." (24 Cal.3d at p. 49.)

In a unanimous opinion this court rejected defendant's challenge to his conviction on two grounds. First, we held that the evidence did not show the jury had reached a deadlock since the foreman had specifically responded they were not hopelessly deadlocked.

The major portion of the opinion, however, addressed the holding that section 1157 was not intended to apply to situations in which the jury was deadlocked on the question of degree. Rather, the court held the section "should apply only to situations in which the jury has neglected to fix the degree, and not to situations in which express disagreement among the members of the jury on the matter of degree has precluded it from achieving unanimity." (24 Cal.3d at p. 52, fn. omitted.) The decision expressly disapproved *Stalcup*.

The *Dixon* opinion examined the legislative and decisional background of section 1157, and of the similar provisions of section 1192.[2]

As originally enacted in 1872 section 1157 had provided only that " 'Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty.' " (*Id.,* at p. 51.) The early cases applying that section had held that the failure to fix the degree required setting aside of the judgment. The cases "all involved situations in which the jury had failed to fix the degree of the crime

---

[2]Section 1192 provides: "Upon a plea of guilty, or upon conviction by the court without a jury, of a crime or attempted crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree. Upon the failure of the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

as a result of inadvertence or in circumstances indicating that an act of leniency was intended. . . . None involved a situation in which the jury had declared itself unable to agree on the matter of degree." (*Ibid.*) This fact we found "readily understandable in light of the provisions of section 1140 of the Penal Code, which has provided since 1872 . . . that the court may declare a mistrial and discharge the jury when 'it satisfactorily appears that there is no reasonable probability that the jury can agree.' [Citation omitted.]" (*Id.*, at p. 52.) In light of section 1140[3] and the prior judicial construction of section 1157 we found it a just inference that when the 1949 Legislature added to section 1157 the provision that upon the jury's failure to fix the degree the crime should be deemed to be the lesser degree it "used the word 'failure' solely in the sense of omission to perform and not in the alternative sense of inability to achieve success." (*Id.*, at p. 52, fn. omitted.) We observed that a contrary conclusion would lead to "absurd results, in which a clear minority favoring a lesser degree could effectively prevail over a clear majority favoring the greater degree." (*Ibid.*)

Thus, in *Dixon* we held the trial court had acted properly when it instructed the jury that it must reach a unanimous verdict on degree. Nor did the court err when it instructed the jury to continue deliberations after the foreman informed the court that the jury had agreed upon a verdict of murder but had not reached unanimity on the question of degree and that he believed it could reach a verdict if it continued to deliberate.

The Attorney General's argument that *Dixon* gives trial courts the option of applying section 1157 when a jury is unable to reach a verdict on degree flies in the face of the clear language of the *Dixon* court as well as the mandatory language of section 1157: ". . . the jury . . . *must* find the degree of the crime. . . . Upon the failure of the jury . . . to so determine, the degree of the crime . . . *shall be deemed* to be of the lesser degree." (Italics added.) The statutory language leaves no room for the discretion respondent wishes to vest in the trial court.

The Attorney General urges that we apply *Stone* v. *Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809] in some sort of converse manner: because all the jurors in this case agreed that defendant was guilty of the lesser offense murder, i.e., the unlawful killing of another with malice aforethought, but disagreed only as to whether or not he was guilty of the greater degree, i.e., such killing with premeditation and deliberation, the

---

[3]Section 1140 provides: "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree."

jury unanimously agreed that defendant was guilty of *at least* second degree murder. Thus the Attorney General urges the trial court should have been permitted to receive a sort of "partial verdict of conviction" based on the most serious offense of which all members of the jury might be said to have agreed defendant was guilty.

In *Stone* a majority of this court held that a trial court "is constitutionally obligated to afford a jury the opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense. Failure to do so will cause a subsequently declared mistrial to be without legal necessity." (*Id.*, at p. 519.) The court noted that where the prosecutor charges different offenses in separate counts section 1160 allows a jury to render a partial verdict of acquittal on a greater offense without reaching a verdict on a lesser included offense separately charged. In such cases, the defendant may be retried on the counts as to which the jury failed to agree but not on those as to which it reached a unanimous verdict of acquittal. We determined that "It would be anomalous to formulate a rule that prevents a trial court from receiving a partial verdict on a greater offense on which the jury clearly favors acquittal merely because the prosecutor elected to charge only that offense. . . . In addition to seriously infringing on the defendant's double jeopardy interest in avoiding retrial for offenses on which he has been factually acquitted, such a rule would make his substantive rights turn on the formality of whether he was charged in separate counts . . . or was charged in a single count with only the greater offense." (*Id.*, at pp. 517-518.)

The Attorney General's argument in favor of a partial verdict in this case is not consistent with *Stone,* of course, because *Stone* approved partial verdicts of acquittal only as to those offenses which the jury has *unanimously agreed* the defendant did *not* commit. *Stone* calls for a retrial on those charges as to which the jury was deadlocked in disagreement. In defendant's case the jury was deadlocked as to defendant's guilt of both first and second degree murder. They returned a verdict of murder only after the court erroneously instructed that they could by that method avoid the necessity for reaching unanimity on the question of degree.[4]

Moreover, as noted in *Dixon,* section 1140 expressly authorizes the discharge of the jury where "at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability

---

[4]In *Stone* itself the People relied on *Dixon* to argue that a judge may not receive a verdict of guilty of murder unless the jury is unanimous as to the degree as well as to the crime of murder. The court found the truth of this proposition irrelevant to the question at issue: whether a judge may receive a partial verdict on an offense as to which the jury is unanimous. (See, 31 Cal.3d at p. 510-511, fn. 3.)

that the jury can agree." (24 Cal.3d at p. 52.) Such inability of the jury to agree constitutes legal necessity for a mistrial which, if it is declared at the proper time, may be followed by a retrial without offending the prohibition against double jeopardy. (*Curry* v. *Superior Court, supra,* 2 Cal.3d 707, 712-714; *Paulson* v. *Superior Court* (1962) 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641].) And while California statutes clearly provide for the possibility of an implied. acquittal of a defendant they explicitly preclude any conviction "unless the jury expressly find against the defendant upon the issue. . . ." (Pen. Code, § 1162.)[5]

For these reasons we reaffirm our adherence to the *Dixon* decision and the principle that it is improper for a trial court to instruct a jury that it can avoid reaching a unanimous verdict on the question of degree by returning a general verdict finding the defendant guilty of an unspecified degree of murder.

We also reject the Attorney General's argument that defendant is in no position to complain because the trial court resolved the jury deadlock "in defendant's favor" by deeming the conviction to be of the lesser degree. This argument is based in part on the theory that any retrial would be on the issue of the degree of the offense only because there has already been a "partial verdict of guilt" of murder. We have explained that California law does not provide for such a partial verdict of guilt. Equally important, however, is the statutory provision for a mistrial where there is no reasonable probability that the jury can agree on its verdict. (§ 1140.) There may well be situations in which a defendant believes it to be to his or her advantage to declare a mistrial and submit the entire case to a newly empaneled jury. This is a tactical decision for the party, not a rule of law properly applied by a trial or appellate court.

■ In this particular case, however, the record indicates the defense in fact made a tactical decision that the erroneous instruction and the resulting verdict of second degree murder would be more advantageous to the defendant than a mistrial and subsequent retrial on the charge of first degree murder. This deliberate tactical motive for encouraging the trial court to proceed with an erroneous instruction precludes defendant from asserting this error as a basis for a reversal of his conviction.

---

[5]Section 1162 provides: "If the jury persist in finding an informal verdict, from which, however, it can be clearly understood that their intention is to find in favor of the defendant upon the issue, it must be entered in the terms in which it is found, and the Court must give judgment of acquittal. But no judgment of conviction can be given unless the jury expressly find against the defendant upon the issue, or judgment is given against him on a special verdict."

■ The trial court's duty to fully and correctly instruct the jury on the basic principles of law relevant to the issues raised by the evidence in a criminal case is so important that it cannot be nullified by defense counsel's negligent or mistaken failure to object to an erroneous instruction or the failure to request an appropriate instruction. (*People* v. *Graham* (1969) 71 Cal.2d 303, 317-319 [78 Cal.Rptr. 217, 455 P.2d 153].) The existence of some conceivable tactical purpose will not support a finding that defense counsel "invited" an error in instructions. The record must reflect that counsel had a deliberate tactical purpose. As this court recently explained, "the issue centers on whether counsel deliberately caused the court to fail to fully instruct, not whether counsel subjectively desired a certain result." (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 334-335 [185 Cal.Rptr. 436, 650 P.2d 311].)

Here defense counsel's actions taken as a whole, and particularly his argument at the time of sentencing, show that his lack of objection to the proposed instruction was more than mere unconsidered acquiescence. Counsel had participated in a discussion of the proper response to the jury's request for further instruction. He agreed to the proposed instruction and made no objection to the verdict which followed. At sentencing counsel urged the court to enter a verdict in accord with the erroneous theory on which the instruction was based. Although this argument came later in time than the error, it shows that counsel had a deliberate tactical purpose for accepting the instruction and the verdict based upon it. Counsel thereby avoided subjecting defendant to a new trial at which he might possibly have been convicted of a more serious offense than second degree murder.[6]

### III

Defendant makes four other contentions of error: (1) that he did not make an unequivocal and voluntary waiver of his rights to counsel and to remain silent prior to making a damaging statement to police (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]); (2) that the trial court did not make an adequate inquiry into the basis for his motion to remove the public defender as his counsel (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]); (3) that an identification witness was improperly permitted to state that she was afraid to

---

[6]Of course, if counsel had done all of these acts in ignorance of the law, there would not be invited error here. There might instead be inadequate representation by counsel. But there is neither any indication in the record nor any allegation by defendant that counsel acted out of ignorance or that he rendered constitutionally deficient assistance at trial. Where the record on appeal does not provide the necessary facts, a claim of constitutionally inadequate representation is more appropriately made by petition for habeas corpus. (*People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

testify (Evid. Code, § 352); and (4) that the court made an improper dual use of facts when sentencing defendant to consecutive prison terms (§ 1170, subd. (b); *People* v. *Lawson* (1980) 107 Cal.App.3d 748 [165 Cal.Rptr. 764]). Our examination of the record indicates that none of these allegations constitutes reversible error.

A. *Miranda Waiver*

■ Defendant moved to exclude his statement on grounds that he had not made an unequivocal waiver of his rights and that any apparent waiver was involuntary because of intoxication. After considerable argument, the trial court denied the motion on both grounds. The statement was not offered into evidence by the People, but the district attorney indicated that he would use it for impeachment purposes should defendant testify to a different version of the events.

Defendant now renews his contention that the statement was inadmissible. He further urges that the trial court's erroneous ruling requires reversal of his conviction, despite the fact the statement was not placed in evidence, because it resulted in his decision not to testify in his own defense. (See *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833].)

■ On appeal it is our duty to "'examine the uncontradicted facts to determine independently whether the trial court's conclusion of voluntariness was properly found.'" (*People* v. *Murtishaw* (1981) 29 Cal.3d 733, 753 [175 Cal.Rptr. 738, 631 P.2d 446]; *People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672]; *People* v. *Sanchez* (1969) 70 Cal.2d 562, 571-572 [75 Cal.Rptr. 642, 451 P.2d 74].) ■ Based on the transcribed record, the trial court ruled correctly.

A tape recording of defendant's interview with Officer Skeeter showed that the officer informed defendant of his constitutional rights to counsel and to remain silent and that anything defendant said could and would be used against him in court. Defendant acknowledged that he understood those rights. When asked if he wished to waive his rights and talk with the police defendant responded in words that the trial court accurately characterized: "'Yeah, whatever,' followed by a word that sounded like, 'emerges.' It sounded like he says 'Yeah, whatever emerges,' or 'emerches.' And then Officer Skeeters says something like, 'What did you say?' and the defendant says, 'Yeah, whatever; I don't know. I guess so. Whatever you want to talk about, you just tell me, I'll answer.'"

Although defendant's response included the words "I don't know," when taken in the context of his entire response and ensuing statement, the words did not indicate that he wished to remain silent.

Nor did the results of urine and blood tests submitted by defendant show the statement was involuntary. The blood tests were negative for alcohol or any other substance. There were two urine tests; one showed .07 percent blood alcohol and the other .00. The urine tests further indicated the presence of some opiate derivative and/or cocaine. However, we agree with the trial court's finding that the tape recording corroborates Officer Skeeter's testimony that defendant acted sober and appeared to understand the proceedings. The circumstances described by defendant in the record do not show that a contrary conclusion should have been reached. (Cf. *In re Cameron* (1968) 68 Cal.2d 487 [67 Cal.Rptr. 529, 439 P.2d 633].)

B. *Failure to Inquire Into Basis for Defendant's Motion to Remove Counsel*

■ Three weeks prior to commencement of trial defendant filed a handwritten motion to relieve counsel appointed to represent him. He alleged that the public defender (here he named the chief public defender rather than the deputy who actually handled his case) had set a trial date without having spoken with him; that counsel had not discussed with him whether or not suggested witnesses had been contacted, and that counsel had failed to make any effort to help defendant in the defense of his case. The trial court, in the presence of defendant and both counsel, asked defense counsel about the motion. Counsel responded that he disagreed with the allegations and that he had had sufficient time to prepare the case. After some discussion of potential speedy trial problems, the court informed defendant that his counsel was an "outstanding, competent and capable attorney who represents to this Court he is prepared in your case, and he anticipates he will have no problem as far as adequately protecting you." The court then denied the motion.

Although the court could have inquired further into defendant's complaints to discover whether counsel had communicated with his client and whether defendant had submitted names of potential witnesses, the court's failure to do so did not amount to denying defendant an opportunity to enumerate specific examples of inadequate representation. (Cf. *People* v. *Marsden* (1970) 2 Cal.3d 118, 122 [84 Cal.Rptr. 156, 465 P.2d 44], where the court refused the defendant's repeated request that the court tell him what he would have to do to show that his attorney was rendering ineffective assistance.) The court here was aware of the grounds for defendant's motion and satisfied itself that counsel was in fact adequately prepared although he might not have communicated fully with his client. (See *People* v. *Terrill* (1979) 98 Cal.App.3d 291 [159 Cal.Rptr. 360].) Defendant does not claim that counsel subsequently rendered constitutionally ineffective assistance at his trial.

## C. *Testimony That Witness Was Afraid to Testify*

Arlene Martinez provided eyewitness identification of defendant. She testified that she had selected him as the assailant in an in-person lineup on March 25. She further identified him in the courtroom. When initially asked whether the person she had identified in the lineup was in the courtroom, she hesitated before answering yes. Following an *in camera* hearing with the witness and both counsel present, the court ruled that the district attorney might ask the witness whether she was reluctant to testify because of fear. The court ruled that the fact she felt fear, whether or not caused by specific acts of any persons connected with the trial, was relevant to her credibility and that the probative value outweighed any potential prejudice to defendant. (See, Evid. Code, § 352.) The *in camera* proceedings had revealed that the witness' fear was not caused by any threats or intimidation, but only by the nature and gravity of her testimony.

When she resumed the stand the district attorney asked her if she was afraid to testify. She responded in the affirmative and the questioning proceeded to the substantive identification issue. On cross-examination defendant's counsel clarified that her fear was due only to the importance of the event.

■ Defendant now argues the evidence was irrelevant, because the witness was able to identify defendant, and that its only function was to prejudice defendant. This contention is without merit. The determination that an explanation of Ms. Martinez' hesitation would be relevant to the jury's assessment of her credibility was well within the discretion of the trial court. (See, *People* v. *Green* (1980) 27 Cal.3d 1, 20 [164 Cal.Rptr. 1, 609 P.2d 468].) Defense counsel's question clarified that her fear did not reflect on defendant, thus avoiding prejudicial impact. The trial court properly exercised its discretion pursuant to Evidence Code section 352.

## D. *Dual Use of Facts at Sentencing*

The trial court relied upon the following aggravating factors: the crime involved great violence, callousness and disregard for the rights of others; defendant used a weapon (no additional term was imposed for firearm use; see § 1170.1, subd. (e)); there were multiple victims; defendant has a history of violent conduct and numerous and increasingly serious convictions; defendant's performance on parole has been unsatisfactory. The fact that defendant may have been under the influence of alcohol or drugs at the time of the shooting was considered as the only possible circumstance in mitigation. (See, Cal. Rules of Court, rules 421, 423.) Thus the court imposed the upper term for the assault of Rudolpho Lopez.

The court ordered the sentence for the assault of Robert Perez to run consecutively, finding that the crimes involved separate acts of violence, multiple victims and were committed under extremely aggravated circumstances. (See rule 425.)

■ Defendant contends the trial court erred because it considered the involvement of multiple victims as justification for both the aggravated term and the consecutive term. (§ 1170, subd. (b); *People* v. *Lawson* (1980) 107 Cal.App.3d 748 [165 Cal.Rptr. 764].) This he argues entitles him to at least a new sentencing hearing. (*People* v. *Burney* (1981) 115 Cal.App.3d 497 [171 Cal.Rptr. 329].)

■ In order to determine whether error by the trial court in relying upon improper factors in aggravation requires remanding for resentencing "the reviewing court must determine if 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' (*People* v. *Watson* [(1956)] 46 Cal.2d [818, 836 (299 P.2d 243)].)" (See, *People* v. *Wright* (1982) 30 Cal.3d 705, 719 [180 Cal.Rptr. 196, 639 P.2d 267], opinion of Bird, C. J., dissenting from the court's holding on another point.) However, "[t]he statutory preference for imposition of the middle term, when coupled with the requirement that aggravating circumstances must outweigh mitigating circumstances before imposition of the aggravated term is proper, creates a presumption." (*Id.*, at p. 720.) Thus, the reviewing court may not simply ask whether the imposed sentence would be "wholly unsupported or arbitrary in the absence of error" but must also reverse where it cannot determine whether the improper factor was determinative for the sentencing court. (*Ibid.*)

■ In this case, there was improper dual use of facts. The court used both the factor of multiple victims and of the aggravated nature of the violence to impose both the aggravated and consecutive terms. (It seems that the court was mistaken when it found that this offense involved separate acts of violence; defendant's act was directed against more than one victim, but involved a single shooting spree on a single occasion.) However, in view of the court's remarks indicating the strength of its belief that this crime was particularly and wantonly violent and that this defendant has one of the worst records the court had seen for a 19-year-old person, and the existence of the additional aggravating factors of weapon use and defendant's history of violent criminal conduct, it seems clear that the improper dual use of facts was not determinative. It is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error.

The judgment is affirmed.

Bird, C. J., Kaus, J., Broussard, J., Grodin, J., and Dearman, J.,* concurred.

**MOSK, J.**—The circumstances of this case induce me to concur under compulsion of *People* v. *Dixon* (1979) 24 Cal.3d 43 [154 Cal.Rptr. 236, 592 P.2d 752].

If presented with more compelling facts in a future case, I might well urge this court to consider anew whether *Dixon* adequately serves judicial economy, the best interests of the defendant and the ends of justice.

---

*Assigned by the Chairperson of the Judicial Council.