[No. B058072. Second Dist., Div. Four. Sept. 11, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
PEDRO ZAPATA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and II.

**COUNSEL**

Edward H. Smith, under apppointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Kristofer Jorstad and David A. Warshaw, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**EPSTEIN, J.**—In the published portion of this opinion we decide that when a jury is unable to unanimously agree on defendant's guilt or innocence of a crime within the accusatory pleading, and the prosecution is willing to forego its right to a verdict or mistrial on that charge, the court may receive a verdict on a lesser included offense to that crime. In the unpublished portion of this opinion we conclude that appellant suffered no prejudice with respect to denial of his requested jury instructions, and that the record on appeal is sufficient to afford a proper review of the issues presented. As a result, we affirm the appellant's conviction of assault with a deadly weapon.

### FACTUAL AND PROCEDURAL SUMMARY

During the evening of April 21, 1990, appellant Pedro Zapata attended a reception for his niece's 15th birthday at the Cofradia Hall in South Gate. Joseph Rodriguez and Lorenzo Fierose and their mother, Rosie Gil, were attending a different reception at that hall on the same evening. Rodriguez and Fierose are half-brothers.

An altercation erupted in the area of the men's rest room at the hall shortly before midnight. The two men who began the altercation were ejected from the building by security guards. One of the ejected men was swearing at and arguing with the guards.

Ms. Gil testified that although her sons were standing by the bathroom, they were not involved in the altercation. She told her sons, "Don't start no trouble," and they went to the dancing area. Ms. Gil said that appellant was involved in the altercation. Appellant told a different story: he testified that Rodriguez and Fierose were the two men who were escorted from the hall. One of the guards also testified that appellant was not involved in the altercation.

Ms. Gil, her sons and some other people left the hall after the altercation at the bathroom. Her sons exited ahead of her. Upon exiting, Ms. Gil saw a commotion involving appellant, her son Rodriguez, and other persons. She told Rodriguez not to start an argument and to go to their car. Rodriguez, in turn, told appellant not to start trouble, and walked to the car. At that point appellant was being held by other persons, but he soon broke free and shot both Fierose and Rodriguez.

Appellant testified that after the altercation at the bathroom, and while he and his two brothers were waiting outside of the hall, Fierose and Rodriguez tried to enter the building, but the guards refused to let them in. He said that either Fierose or Rodriguez then turned to him and asked what gang he belonged to. Appellant said that he did not belong to a gang.

The person who asked the question then approached appellant and struck him several times with a bottle saying, "Aqui para Hickory Watts," literally "Here for Hickory Watts" and in the vernacular "Here stops Hickory Watts." Appellant said he blocked these blows and struck back, but the other person (either Fierose or Rodriguez) hit him from behind with a pistol, and the first person approached him with a broken bottle. Appellant then took a gun out of his pocket and shot both attackers. He testified that he believed that they were going to kill him. Immediately after the shooting, he ran down Firestone Boulevard.

It was then between 11:30 p.m. and midnight. Two officers of the South Gate Police Department, on patrol at the intersection of State and Firestone Boulevard, saw appellant run across Firestone Boulevard and observed that he was carrying a gun.

Appellant ran into an alley between a Shell gas station and an abandoned fire station. One of the officers ordered him to drop the gun. After the third

command to drop the gun, appellant threw the weapon into a crack between two walls. He was arrested at that point. The officers later retrieved the gun from the wall.

Appellant was charged with two counts of attempted murder in violation of Penal Code sections 664 and 187, subdivision (a), with allegations of firearm use and infliction of great bodily injury. The jury acquitted him of all charges with respect to Fierose. The jury also found him not guilty of attempted murder of Rodriguez, but deadlocked on the lesser included offense of attempted voluntary manslaughter with respect to Rodriguez. Ultimately it convicted him of the lesser related offense of assault with a deadly weapon on Rodriguez. The court declared a mistrial on attempted voluntary manslaughter of Rodriguez. Later it denied a motion for new trial and sentenced appellant to five years in state prison. He appeals from the judgment of conviction.

DISCUSSION

I, II*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

III

■    Appellant's final argument is that the trial court erred in permitting the jury to return a verdict on assault with a deadly weapon before deciding guilt or innocence on the lesser included offense of attempted voluntary manslaughter. He relies on *Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 519 [183 Cal.Rptr. 647, 646 P.2d 809] and *People* v. *Kurtzman* (1988) 46 Cal.3d 322, 334 [250 Cal.Rptr. 244, 758 P.2d 572], which hold that a jury should be instructed to decide a defendant's guilt or innocence on the charged offense before rendering a verdict on a lesser included crime.

The precursor to *Stone* and *Kurtzman* is *People* v. *Dixon* (1979) 24 Cal.3d 43 [154 Cal.Rptr. 236, 592 P.2d 752]. In *Dixon*, the defendant was charged with first degree murder. After a period of deliberation, the jury asked whether, if it unanimously agreed that the defendant was guilty of murder but was divided on whether his crime was first degree murder, a unanimous vote was necessary for a verdict of guilty of second degree murder. The court answered that it was. (*Id.* at p. 48.) Defendant was ultimately convicted of first degree murder and, on appeal, his attorney argued that the court should have told the jury that if it failed to determine the degree of the

---

*See footnote, *ante*, page 527.

crime, a guilty verdict would be deemed to be of the lesser (second) degree. While it was, and is, true that guilt would be deemed to be of the lesser degree in that situation (Pen. Code, § 1157), the Supreme Court concluded that the trial court had correctly responded to the jury's question, and that it would have been improper to answer the question as defendant proposed. Were it otherwise, any holdout for a lesser degree would know that it would be possible to " 'hang the jury if he cannot have his way.' " (24 Cal.3d at p. 53.)

Underlying this rationale is the right of the People to have the jury decide the principal charge, or to have a mistrial declared so that the principal charge can be tried again. The People are not required to give up their right to a conviction on that charge when the jury is divided, any more than they are required to do so when there are no lesser degrees or lesser offenses. ■ If the jury is deadlocked on the degree of a crime, and the People are not willing to forego their opportunity to have a conviction for the greater degree of the offense, the court must declare a mistrial so that the defendant may be retried for that crime. (See *People* v. *Avalos* (1984) 37 Cal.3d 216, 227 [207 Cal.Rptr. 549, 689 P.2d 121].) But that is not to say that the People cannot choose to give up their right to a decision on the greater offense.

The "acquittal first" rationale, implicit in *Dixon*, was made explicit in *Stone* and *Kurtzman*. In *Stone*, defendant was charged with murder and the lesser included offense of manslaughter. After deliberating, the jury unanimously agreed that he should be acquitted of both first and second degree murder, but deadlocked on manslaughter. The trial court declared a mistrial, and ordered defendant to be retried for murder. (31 Cal.3d at p. 507.) The Supreme Court issued a writ of prohibition to prevent the retrial for murder. The court held that the jury had functionally acquitted defendant of murder, and only the lack of an established procedure prevented the court from receiving partial verdicts memorializing that fact. (*Id.* at p. 514.)

Allowing a retrial for murder therefore would violate defendant's right not to be placed twice in jeopardy for the same offense. (31 Cal.3d at p. 519.) But the acquittal of the greater offense does not bar retrial for a lesser included offense on which the jury is unable to agree. (*Id.* at p. 522.)

*People* v. *Kurtzman*, *supra*, 46 Cal.3d 322, also involved a defendant charged with murder. In that case, the jury reported that it was deadlocked on murder, but was able to agree on manslaughter. The jury was told to resume deliberations and decide whether defendant was guilty of first degree murder before proceeding to lesser included offenses. The jury deliberated further and returned a verdict of not guilty on that crime. When it became clear that

the jury was deadlocked on second degree murder, the trial court instructed that it must decide guilt or innocence of that crime before *considering* the lesser crime of manslaughter. The jury ultimately found defendant guilty of second degree murder. (*Id.* at p. 328.) On appeal, the Supreme Court clarified its decision in *Stone*, which had seemed to suggest that the jury must decide a greater offense before even considering a lesser crime. ▉ The court held that the jury may consider the principal and lesser offenses in any order it may wish, but that it must acquit defendant of the greater offense before returning a verdict on a lesser included offense. (*Id.* at p. 330.)

The procedure established by these cases protects the People's interest in obtaining a verdict on the charged offense, as well as the defendant's right to have a decision of acquittal recorded and not to be placed in jeopardy twice for the same offense. It also is consistent with the statutory rules that a failure of the jury to agree on the degree of a crime that is divided into degrees results in a conviction being deemed to be of the lesser degree (see Pen. Code, §§ 1156, 1192; and see Pen. Code, § 1097 [where reasonable doubt as to degree of offense, defendant may be convicted of lowest degree of the crime]), and with the provision that declares that conviction of a lesser included offense bars retrial of the greater offense. (Pen. Code, § 1023.) That provision is, of course, also mandated by former jeopardy principles. (See *Green* v. *United States* (1957) 355 U.S. 184 [2 L.Ed.2d 199, 78 S.Ct. 221, 61 A.L.R.2d 1119].)

▉ It is true that assault with a deadly weapon is not a lesser included offense to murder. (*In re David S.* (1983) 148 Cal.App.3d 156, 158 [195 Cal.Rptr. 754].) But appellant asked that the jury be instructed on that crime. It satisfies the requirements of a lesser related offense in this case (see *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303]), and there is no reason why the same "acquittal first" procedure should not be applied in such cases. (See *People* v. *Carapeli* (1988) 201 Cal.App.3d 589, 596 [247 Cal.Rptr. 478] [*Stone* applicable to lesser related crimes].)

In this case, as we have seen, the jury reported itself deadlocked on the lesser included offense of attempted voluntary manslaughter before it returned a verdict on the lesser related crime of assault with a deadly weapon. When the jury first reported itself deadlocked on attempted voluntary manslaughter, the trial court asked that it continue its deliberations. Ultimately, the jury rendered a verdict of guilty on assault with a deadly weapon. After satisfying itself that the jury was unable to reach a verdict on attempted voluntary manslaughter, the trial court declared a mistrial on that count and accepted the assault verdict.

That verdict amounted to an implied acquittal of the attempted voluntary manslaughter lesser offense. While the procedure followed in this case was not in accord with *Dixon, Stone,* or *Kurtzman,* its departure from those cases lay solely in depriving the prosecution of its opportunity to have a retrial and possible guilty verdict on attempted voluntary manslaughter. Appellant's statutory and constitutional rights have been fully protected: he cannot be tried again for attempted voluntary manslaughter (or attempted murder, for that matter) because, for both statutory and constitutional purposes, the assault verdict worked an implied acquittal of the greater charges. While the procedure was irregular, there is no basis to declare the resulting verdict "void," as appellant suggests.

The People may choose to forego their right to have a decision on a principal or a greater offense, in favor of a verdict on a lesser offense. That is the effect of what has happened in this case. We are aware of no authority giving a defendant the right to demand a verdict of the principal or greater offense, so long as the defendant is protected against being tried for that charge again in the event a guilty verdict for a lesser charge is upset. Were it otherwise, the defendant would enjoy a windfall. Former jeopardy principles give him no right to be free of the lesser related offense of assault with a deadly weapon, and it would make no sense to order a retrial for that crime, which has been fully tried and on which the jury has unanimously agreed to a verdict.

### DISPOSITION

The judgment is affirmed.

Woods (A. M.), P. J., and Taylor, J.,* concurred.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.