Filed 10/27/15  P. v Alvarez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B257504 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA363875) |
| v. | |
| VICTOR ALVAREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig Richman, Judge.  Affirmed as modified with directions.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Victor Alvarez, of two counts of first degree murder. (Pen. Code[1], § 187, subd. (a).)  The jury found true the multiple murder special circumstance allegations as to both counts.  (§ 190.2, subds. (a)(3), (a)(17).)  Defendant was sentenced to two consecutive life terms without the possibility of parole.  We modify defendant's presentence custody credit.  We affirm the judgment as modified.

# II. THE EVIDENCE

In August 1982, two women, Cordelia Ferguson and Hazel Hughes, were found murdered.  The two women lived on separate floors of the same apartment building.  Both were in their sixties.  Both were petite, weighing less than 90 pounds.  They died around the same time.  Both had suffered multiple stab wounds and blunt force trauma to the head and upper torso.  A bloody pillow was found near each victim.  The victims' apartments had been ransacked.  There was no sign of forced entry.  Ms. Hughes was naked from the waist down.  Defendant also lived in the building.  He had met each of the two women at least once.

Robin Grinnalds lived nearby.  In the early morning hours of August 16, 1982—the day the victims' bodies were discovered—Ms. Grinnalds heard cries and moans coming from somewhere outside.  She stepped onto her apartment's balcony.  She had a clear view into what turned out to be Ms. Ferguson's living room.  Ms. Grinnalds saw a struggle.  She testified, "I saw a person . . . with his arm extended holding something that appeared to be a pillow and pushing downwards."  Ms. Grinnalds telephoned an emergency operator.  She reported, "I think I'm seeing someone get murdered."

Sergeant Edman Ross arrived within minutes.  Sergeant Ross approached the building.  Sergeant Ross then saw defendant walking slowly down the sidewalk.

---

[1]    Unless otherwise noted, all future statutory references are to the Penal Code.

Defendant ran away. Sergeant Ross found defendant hiding behind a dumpster. When questioned, defendant claimed he was homeless and was trying to sleep behind the dumpster. When later interviewed in 2009, defendant denied he was hiding; he said he was trying to get into his apartment.

Sergeant Ross conducted a field show-up. He asked Ms. Grinnalds if defendant was the person she saw from her balcony. Ms. Grinnalds was unable to positively identify defendant. According to Ms. Grinnalds, while observing defendant, she told Sergeant Ross: ". . . I don't know. It could be [him]. But, I can't make a positive identification." At trial, Ms. Grinnalds was shown a picture of defendant taken several days after the murders were discovered. She testified the person in the picture looked similar to the man she saw from her balcony.

Defendant's tennis shoe tread pattern was similar to a bloody partial shoe print found on a book in Ms. Ferguson's apartment. The design was similar. Criminalist Lisa Lahendro testified, "[T]he shoe print on the book and the shoe that I compared it to had a similar design." A pattern injury on Ms. Ferguson's face might have been caused by a tennis shoe. A partial deoxyribonucleic acid profile was created in 2014 from Ms. Ferguson's fingernail scrapings. No genetic material from any other individual was present.

Defendant's fingerprints were found on the outside security bars covering Ms. Hughes's bathroom window. Defendant was a possible contributor of sperm fragments found on anal swabs taken from Ms. Hughes's body. The results were based, however, on a partial profile, only 7 of the then standard 13 markers were detected. Criminalist Angela Zdanowski testified the probability of an unrelated individual exhibiting the same genetic profile was approximately 1 in 663 million. Ms. Zdanowski testified, "[I]t means that I would on average expect to find, approximately, 10 individuals on earth, unrelated individuals, that could match this profile as well."

Detectives Rodrigo Amador and Corey Farell interviewed defendant 27 years after the murders, in 2009. Defendant told the detectives he had lived in the same building as the victims at the time of the murders. Defendant said he had met "the [white] lady on

3

the first floor," who was in a wheelchair. (Ms. Hughes.) He had been in her apartment once to help her with something. Defendant said he had also once helped another old white woman. According to defendant: the woman was someone Mr. Clanton knew and she had dogs; he did not remember what floor she lived on (Ms. Ferguson); there was also a woman on the sixth floor that he had been "spending time with" in 1982; and he said these were the only women in the building he had any contact with.

When the detectives told defendant he faced murder charges, he asked to make a telephone call. The detectives surreptitiously recorded defendant's side of his conversation. Defendant spoke with his mother. In the same conversation, defendant also spoke with a person identified only as "Rod." Defendant said: "Ma, it's me. Yeah, it's me, Rico. I'm going to California. I'm up for murder. I told you. . . . [Y]ou ain't going to see me no more. It's over. It's over, ma. From here, I'm going to California. I don't know, ma. It's two - - it's a body. It's two - - there's two bodies. Yeah, two bodies. [¶] Oh, I told you I was up - - that I was up for that. Uh-huh. I'm going to miss you, momma. I ain't never going to see you again. I ain't going to see you again Mama. . . . [¶] Yeah. I'm going to California and they going to lock me up. Oh god. Oh, man. I'm telling you, this was going to come to haunt me. Yeah. I lied to you, ma. I lied to you, (Inaudible). . . . [¶] . . . [¶] Yo, Rod, it's me. . . . I'm going to California, man. There's two bodies. I told you, man. . . . They got evidence. They got a DNA test. They got a DNA test they took remember? [¶] They found proof. . . . Oh, twenty-eight years ago. DNA test. Murder. . . . [T]wo bodies. . . . [¶] . . . [¶] . . . I'm never coming out, ma. They got proof. They got DNA. Two bodies, mom. Two murders. . . . [¶] Yeah. Oh, God. I knew it was going to come to haunt me. Oh, God Almighty. No. I'm never going to get out again. . . ."

## III. DISCUSSION

### A. Severance

Defendant contends it was an abuse of discretion to deny his motion to sever the two murder charges. We find no abuse of discretion. Pursuant to section 954, "An accusatory pleading may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts . . . ." Two counts of murder were joined in this case, the same crime committed against two different victims. Hence the statutory requirements for joinder were met. (*People v. Merriman* (2014) 60 Cal.4th 1, 36 [assaultive crimes against the person]; *People v. Maury* (2003) 30 Cal.4th 342, 395 [same]; *People v. Sandoval* (1992) 4 Cal.4th 155, 172 [multiple murders].)

However, even when, as here, the statutory requirements are met, a trial court has the discretion to sever charges in the interests of justice and for good cause. (§ 954; *People v. Trujeque* (2015) 61 Cal.4th 227, 258-259; *People v. Merriman, supra,* 60 Cal.4th at p. 37.) In exercising its discretion, as relevant here, a trial court utilizes the following considerations: "The factors to be considered are these: (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; [and] (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; . . . . [Citations.]" (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220-1221; accord, *People v. Trujeque, supra,* 61 Cal.4th at p. 259; *People v. Hartsch* (2010) 49 Cal.4th 472, 493.) Cross-admissibility alone normally suffices to justify denial of a severance motion and to dispel any prejudice. (*People v. Trujeque, supra,* 61 Cal.4th at p. 259; *People v. Merriman, supra,* 60 Cal.4th at p. 38; *People v. Soper* (2009) 45 Cal.4th 759, 775.)

Our review is for an abuse of discretion. (*People v. Merriman, supra,* 60 Cal.4th at p. 37; *Alcala v. Superior Court, supra,* 43 Cal.4th at p. 1220.) Because the statutory joinder requirement was met, defendant must establish the trial court's ruling fell outside

the bounds of reason. (*People v. Trujeque, supra,* 61 Cal.4th at p. 259; *People v. Merriman, supra,* 60 Cal.4th at pp. 37-38; *Alcala v. Superior Court, supra,* 43 Cal.4th at p. 1220.) In assessing the trial court's exercise of discretion, we consider the record that was before the trial court when it ruled. (*People v. Trujeque, supra,* 61 Cal.4th at p. 259; *People v. Hartsch, supra,* 49 Cal.4th at p. 493; *Alcala v. Superior Court, supra,* 43 Cal.4th at p. 1220.)

Defendant has not established an abuse of discretion. The record before the trial court at the time of its ruling, including the preliminary hearing testimony, supported cross-admissibility as to identity and modus operandi: the victims and defendant all lived in the same building; both victims were petite woman in their 60s; their bodies were discovered on the same day; both victims had suffered multiple knife-stab wounds and blunt force trauma to the head and upper torso; a bloody pillow was found near each victim; both apartments had been ransacked; and there was no sign of a forced entry into either apartment. Although a window screen covering Ms. Hughes's bathroom window had been pushed in, it was manifestly unclear how a person could have entered through the security bars covering that window. Further, the trial court could reasonably conclude evidence defendant sexually assaulted Ms. Hughes was not likely to unusually inflame the jury. Each murder involved a very brutal attack on a vulnerable elderly victim. The trial court also could reasonably conclude that, although somewhat weak deoxyribonucleic acid evidence linked defendant to Ms. Hughes's murder, the evidence in each case was otherwise equally strong. Therefore, without abusing discretion, the trial court could rule any prejudice was insufficient to outweigh the benefits of a consolidated trial. As our Supreme Court observed in *People v. Soper, supra,* 45 Cal.4th at page 781: "[A]s between any two charges, it always is possible to point to individual aspects of one case and argue that one is stronger than the other. A mere imbalance in the evidence, however, will not indicate a risk of prejudicial 'spillover effect,' militating against the benefits of joinder and warranting severance of properly joined charges. (*People v. Ruiz* [(1988)] 44 Cal.3d 589, 607 (*Ruiz*) [severance not required of two properly joined murder charges even though evidence underlying one charge was

'relatively weak' and was made 'much stronger' by the evidence underlying the second charge].) Furthermore, the benefits of joinder are not outweighed—and severance is not required—merely because properly joined charges might make it more difficult for a defendant to avoid conviction compared with his or her chances were the charges to be separately tried. [Citations.]"

Even though there was no abuse of discretion in denying severance, we must also consider the actual impact of the joinder at trial. (*People v. Thomas* (2012) 53 Cal.4th 771, 800-801; *People v. Sandoval, supra,* 4 Cal.4th at p. 174; *People v. Bean* (1988) 46 Cal.3d 919, 940.) Our review is for gross unfairness depriving defendant of a fair trial or due process of law. (*Ibid.*; *People v. Turner* (1984) 37 Cal.3d 302, 313.) We find no gross unfairness. Defendant argues the deoxyribonucleic acid evidence as to Ms. Hughes bolstered the weaker case as to Ms. Ferguson. However, the evidence as to each victim was strong. In addition to the forensic and circumstantial evidence, defendant showed a consciousness of guilt in 1982 when he was detained and lied about where he resided. (See *People v. Letner* (2010) 50 Cal.4th 99, 157 [lie offered to demonstrate consciousness of guilt]; *People v. Tate* (2010) 49 Cal.4th 635, 684 [same]; *People v. Barnwell* (2007) 41 Cal.4th 1038, 1057 [consciousness of guilt instruction proper where defendant made false statement to deflect suspicion from himself].) Moreover, in the recorded telephone conversation the detectives recorded, defendant made incriminating statements and expressed his expectation he would eventually pay for his crimes.

Defendant asserts the trial court applied the wrong standard in ruling on the motion. That contention is without merit. Defendant's claim rests on a brief, ambiguous statement in the midst of a well-reasoned decision. The trial court said the standards are different for charged and uncharged offenses. The trial court's meaning was not entirely clear. But our Supreme Court has held the prosecution's burden with respect to a charged offense is the reverse of that with respect to an uncharged offense: "In cases in which the evidence to be introduced relates to an *uncharged offense* the People, as the proponent of the evidence, bear the burden of persuading the judge that the potential prejudice from the jury becoming aware of the uncharged offense is outweighed by the probative value

7

of the evidence. . . . [¶] The burden is reversed, however, when the offense to which the evidence is relevant is a *charged offense,* properly joined with another for trial. The prosecution is entitled to join offenses under the circumstances specified in section 954. The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried. [Citations.]" (*People v. Bean, supra,* 46 Cal.3d at pp. 938-939; accord, *Alcala v. Superior Court, supra,* 43 Cal.4th at p. 1222, fn. 11.) Nothing about the trial court's unobjected comments permits reversal.

## B. The Jury's Question During Deliberations

The deliberating jury reached a consensus—guilty—as to Ms. Hughes's murder, count 1. The jury then inquired, "Can we use the guilty verdict for Hazel H. as evidence towards Cordelia F[.]? Or do we turn a blind eye to Hazel H. and strictly go on evidence related?" The trial court recorded the jury's guilty verdict on count 1. The trial court then excused a juror due to travel plans. That juror was replaced with an alternate. The trial court instructed the jury to begin its deliberations anew as to count 2. Following discussion with counsel, the trial court further instructed the jury, in response to its question, "[Y]ou may consider all the evidence that was presented throughout the entire trial as you feel appropriate in deciding count 2."

Defendant contends this was prejudicial error and a violation of his federal constitutional rights. However, defense counsel, Jana Seng, suggested in part and specifically agreed to instruction in the foregoing manner. Therefore, defendant cannot challenge the instruction on appeal. (*People v. Turner* (2004) 34 Cal.4th 406, 437; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1193; *People v. Cooper* (1991) 53 Cal.3d 771, 847.)

Even if the issue were properly before us, we would not find any abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 745-746 ["An appellate court applies the abuse of discretion standard of review to any decision by a trial court to

8

instruct, or not to instruct, in its exercise of its supervision over a deliberating jury"];
*People v. Eid* (2010) 187 Cal.App.4th 859, 882 ["We review for an abuse of discretion any error under Section 1138"].) Having given complete instructions prior to the deliberations commencing, the trial court had discretion under section 1138[2] to determine what additional explanation would suffice in response to the jury's inquiry. (*People v. Davis* (1995) 10 Cal.4th 463, 522; *People v. Beardslee* (1991) 53 Cal.3d 68, 97; *People v. Eid, supra,* 187 Cal.App.4th at p. 882.) The trial court could properly exercise that discretion in this case as it did. The jury had previously been instructed that: "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one." Additionally, the jury had been instructed, "In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the trial." The jury is presumed to have followed those instructions. (*People v. Pearson* (2013) 56 Cal.4th 393, 477; *People v. Aranda* (2012) 55 Cal.4th 342, 387-388.) In response to the jury's inquiry during deliberations, the trial court told the jury to consider all the evidence. The trial court took care not to instruct that the jury it could consider the *guilty verdict* on count 1 in deciding count 2. The court instructed, "[B]ecause juror No. 11 did not participate in the, quote, guilty verdict, unquote, you can not consider the, quote, guilty verdict, unquote."

Even if there was error, defendant has not shown it is reasonably probable the result would have been more favorable had the trial court instructed the jury differently. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 1027 ["'[A] conviction will not be reversed for a violation of [section] 1138 unless prejudice is shown'"]; *People v. Roberts* (1992) 2 Cal.4th 271, 326 [*Watson* standard of prejudice applies]; *People v. Hodges* (2013) 213

---

[2] Section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

Cal.App.4th 531, 539 [same]; *People v. Eid, supra,* 187 Cal.App.4th at p. 882 [same], or that he was denied a fair trial (see *People v. Box* (2000) 23 Cal.4th 1153, 1214, disapproved on another point in *People v. Martinez* (2010) 47 Cal.4th 911, 948, fn. 10.)) Defendant's assertions of prejudice relate to the trial court's decision to join the two murder charges for trial rather than to the foregoing instruction.  As discussed above, however, the trial court did not prejudicially abuse its discretion in refusing to sever the charges.

Defendant further asserts Ms. Segg, his trial counsel, rendered ineffective assistance in failing to object and request an instruction restating that each count must be considered separately.  Defendant asserts prejudice in that the newly constituted jury reached a verdict on count 2 in less than two hours.  In order to prevail on this claim, defendant must establish, as a demonstrable reality, there is a reasonable probability of a different result.  (*Strickland v. Washington* (1984) 466 U.S. 668, 697; *People v. Carrasco* (2014) 59 Cal.4th 924, 982; *In re Champion* (2014) 58 Cal.4th 965, 1007-1008.)  It is not reasonably probable the result would have been more favorable had Ms. Segg objected and requested an instruction that each count must be considered separately.

## C.  Presentence Custody Credit

The trial court gave defendant credit for 1,686 days in presentence custody. However, defendant was arrested on November 19, 2009, and sentenced 1,685 days later, on June 30, 2014.  Therefore, he was entitled to credit for 1,685 days, not 1,686.  (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48; *People v. Morgain* (2009) 177 Cal.App.4th 454, 469.)  The judgment must be modified and the abstract of judgment amended to so provide.  (*People v. Miles* (2013) 220 Cal.App.4th 432, 437; *People v. Donan* (2004) 117 Cal.App.4th 784, 792-793.)

## IV. DISPOSITION

The judgment is modified to award defendant 1,685 days of presentence custody credit. The judgment is affirmed in all other respects. Upon remittitur issuance, the clerk of the superior court is to prepare an amended abstract of judgment and deliver a copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.

We concur:


KRIEGLER, J.


KIRSCHNER, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11