Filed 1/2/25  P. v. Amador CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EDWARD JESSIE AMADOR,<br><br>Defendant and Appellant. | F087326<br><br>(Super. Ct. No. 1209890)<br><br><br>**OPINION** |

### THE COURT<sup>*</sup>

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nancy A. Leo, Judge.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Meehan, Acting P. J., Snauffer, J. and DeSantos, J.

# INTRODUCTION

Appellant Edward Jessie Amador was found guilty by jury of one count of first degree robbery (Pen. Code, §§ 211, 212.5, subd. (a)),[1] and two counts of second degree robbery (§§ 211, 212.5, subd. (c)).  It was also found true that appellant personally used a knife during the commission of the first degree robbery offense (§ 12022, subd. (b)(1)); that appellant had two prior serious felony convictions for second degree robbery (§ 211), which qualified as prior strikes under the "Three Strikes" law (§§ 667, subds. (b)–(i); 1170.12, subds. (a)–(d)); and that appellant had served three prior prison terms (§ 667.5, former subd. (b)).

The trial court sentenced appellant as a third-strike offender.  On count I, the court imposed a sentence of 25 years to life (§ 667, subd. (e)(2)(A)(ii)), plus 10 years for the two prior serious felony conviction enhancements (*id.*, subd. (a)), plus one year for the weapon enhancement (§ 12022, subd. (b)(1)).  On count II, the court imposed a consecutive term of 25 years to life (§ 667, subd. (e)(2)(A)(ii)), plus 10 years for the two prior serious felony conviction enhancements (*id.*, subd. (a)).  And, on count III, the court imposed a concurrent term of 25 years to life (*id.*, subd. (e)(2)(A)(ii)).  Additionally, the court imposed one-year terms for each of the three prior prison term enhancements under former section 667.5, former subdivision (b).  The aggregate term imposed was 24 years determinate followed by an indeterminate term of 50 years to life with 1,080 days of actual credit.

# FACTUAL BACKGROUND

In May 2006, appellant robbed a bank teller at gunpoint, and grabbed money off of the counter the teller had laid out for a customer.  Appellant began to yell at the teller to give him more money, but when the teller was unable to open the cash drawer, appellant ran out of the bank.

---

[1]     Further statutory references are to the Penal Code.

Appellant fled to a nearby residence of a man and his mother and demanded the keys to their vehicle. The man refused to give appellant the keys, and appellant grabbed a knife from the kitchen, held it in the air, and grabbed the man by his shirt collar. Appellant shoved the man into the man's mother and told the man to give appellant the car keys or he would kill the man's mother. The man gave appellant the keys to his car, and appellant ran out of the residence and left in the man's car.

Appellant was found guilty by a jury of first degree robbery and two counts of second degree robbery. Appellant was sentenced to an aggregate term of 24 years determinate followed by an indeterminate term of 50 years to life. During his incarceration, appellant was convicted by plea agreement of violating section 4573.6 related to a scheme to bring drugs into the prison. Appellant was sentenced to an additional four years to run consecutive to the terms imposed for the 2006 offenses.

At some point prior to April 2023, the Department of Corrections and Rehabilitation (CDCR) identified appellant as potentially eligible for relief under Senate Bill No. 483 (2021–2022 Reg. Sess.), and the trial court appointed appellant counsel and set a hearing on the matter for July 25, 2023. At the hearing, the court stated that "at this point in time this matter will be dropped with no future court dates set. And the matter will be back for petition for resentencing after [appellant] serves out his sentence."

In August 2023, the Secretary for the CDCR sent a letter to the trial court explaining that, pursuant to changes in the law since appellant was sentenced, courts are now authorized to strike prior serious felony conviction enhancements under section 667, subdivision (a), or to strike the punishment for the enhancement under section 1385. The letter recommended that appellant's sentence be recalled, and that he be resentenced in accordance with section 1172.1, subdivision (a)(1). The letter included a detailed summary and evaluation report as to appellant's prior criminal history, in-custody rules violations, security classification and work performance evaluations, and appellant's self-help activities. It also indicated appellant was 58 years old in 2023, and was to be

3.

scheduled for a parole hearing consultation scheduled no later than October 10, 2026, for elderly parole consideration.

The trial court set the matter for a hearing on November 1, 2023. On October 30, 2023, the People filed a brief in opposition to CDCR's recommendation for recall and resentencing under section 1172.1. The People argued appellant was "clearly eligible" for relief under section 1172.75 as to the now-invalid enhancements imposed under section 667.5, former subdivision (b). The People urged the court not to resentence appellant under section 1172.1 because he posed an unreasonable risk of danger to public safety, and instead to resentence him under section 1172.75, striking only the invalid prior prison term enhancements without striking or reducing any other portion of appellant's original sentence.

At the hearing on November 1, 2023, the court ascertained the matter should be heard in a different department. Defense counsel requested an opportunity to respond to the People's opposition; the matter was continued, and a hearing was set for the purpose of "having a modification hearing."

Defense counsel filed a request for resentencing under section 1172.1 and, based on a number of circumstances, requested the trial court recall appellant's sentence and resentence him as follows: striking all section 667, subdivision (a), enhancements, striking the one-year weapons enhancement (§ 12022, subd. (b)(1)), striking all of appellant's prior strike offenses and to resentence him without any strike priors.

On December 11, 2023, the trial court held a hearing "for a [section] 1172.1 resentencing" where appellant appeared via video. Defense counsel argued the matter was proceeding under section 1172.1 pursuant to CDCR's referral, and that the court should recall and resentence appellant. Defense counsel urged the court "to strongly consider exercising its discretion and removing at least some of those five year [section] 667[, subdivision ](a) enhancements." The prosecuting attorney produced appellant's certified rap sheet, argued appellant had a lengthy criminal history that had

4.

been increasing in violence, noted appellant's in-custody conviction, and argued appellant "has the capability of committing a super strike." The People requested that the court consider public safety when making its decision.

After additional argument, the trial court stated as follows: "All right. And [appellant] does have a very lengthy criminal history that did increase in severity each and every time. And while I appreciate the fact that he has served some time already in state prison, the offenses themselves are very outrages [*sic*] as well as the set of circumstances, and I will not, based on his criminal history, I find that he does pose an unreasonable risk of danger to public safety. [¶] I will not strike the [section] 12022[, subdivision ](b)(1) [enhancement], will not strike the [section] 667[, subdivision ](a) priors as well. The three, [section] 667.5[, subdivision ](b) priors, however, will be stricken. It is no longer valid. And [appellant's] term then will be reduced by three years then." An amended abstract of judgment was prepared that calculated the same number of custody credits that were originally calculated in 2009.

## DISCUSSION

### I. Recall and Resentencing Under Section 1172.1

The CDCR recommended that appellant's sentence be recalled and that he be resentenced in accordance with section 1172.1; a hearing and decision on that recommendation occurred in December 2023.[2]

Under former subdivision (a)(1) of section 1172.1 then in effect, "When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary of the [CDCR] …, the court may, …, *at any time upon recommendation of the secretary* …, recall the sentence and commitment previously ordered and resentence the

---

[2] Because the trial court's decision on recall and resentencing was made in 2023, we apply the version of section 1172.1 that was in effect at that time. Subsequent amendments to the statute not relevant here took effect January 1, 2024. (See Stats. 2023, ch. 446, § 2; Stats. 2023, ch. 131, § 157; Stats. 2023, ch. 795, § 1.5.)

defendant in the same manner as if they had not previously been sentenced .…'" (Italics added.)

"If a resentencing request pursuant to subdivision (a) is from the Secretary of the [CDCR], … [¶] … [¶] … [t]here shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." (§ 1172.1, former subd. (b)(2).) Section 1170.18, subdivision (c), in turn, defines an unreasonable risk of danger to public safety to mean an "unreasonable risk that the petitioner will commit a new violent felony within the meaning of [section 667, subdivision (e)(2)(C)(iv)]." "The cited subdivision of section 667 identifies eight types of particularly serious or violent felonies, known colloquially as 'super strikes.'" (*People v. Valencia* (2017) 3 Cal.5th 347, 351, fn. omitted.)

The court is required to "state on the record the reasons for its decision to grant or deny recall and resentencing." (§ 1172.1, former subd. (a)(6).) "Resentencing may be granted without a hearing upon stipulation by the parties," but resentencing "shall not be denied, nor a stipulation rejected, without a hearing where the parties have an opportunity to address the basis for the intended denial or rejection. If a hearing is held, the defendant may appear remotely and the court may conduct the hearing through the use of remote technology, unless counsel requests their physical presence in court." (*Id.*, former subd. (a)(7), (8).)

If a court states its reasons for granting recall and resentencing, the court then proceeds to resentence the defendant "in the same manner as if they had not previously been sentenced, … provided the new sentence, if any, is no greater than the initial sentence." (§ 1172.1, former subd. (a)(1).) In conducting the resentencing, the court "may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced

6.

the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice. The court *shall* consider if the defendant has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence, if the defendant was a victim of intimate partner violence or human trafficking prior to or at the time of the commission of the offense, or if the defendant is a youth or was a youth … at the time of the commission of the offense, and whether those circumstances were a contributing factor in the commission of the offense." (*Id.*, former subd. (a)(4), italics added.) Upon resentencing, the court is also to award the defendant credit for time served. (*Id.*, former subd. (a)(5).)

## II.     Analysis

Appellant argues the trial court *declined* to grant recall and resentencing, instead determining appellant posed a risk of danger to public safety such that the presumption in favor of recall and resentencing under section 1172.1, subdivision (b)(2), was overcome. In doing so, appellant argues, the court abused its discretion because it "largely ignored" appellant's age and medical condition, and there was no substantial evidence appellant posed an unreasonable risk to public safety within the meaning of section 1170.18, subdivision (c); for that reason, appellant argues, the presumption in favor of granting recall and resentencing was *not* overcome.

The People contend that appellant's argument rests on the false premise the trial court declined to recall and resentence him. But here, the People maintain, the trial court effectively recalled appellant's sentence and resentenced him to a lesser term—i.e., by striking the invalid section 667.5, former subdivision (b), enhancements, but declining to make any other sentencing adjustments.

### A.     Standard of Review

The interpretation of section 1172.1 is a question of law we review de novo. We review the trial court's discretionary sentencing decisions, including those pertaining to

7.

enhancements, for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373–374 (*Carmony*); *People v. Salazar* (2023) 15 Cal.5th 416, 428, fn. 8; *People v. Frazier* (2020) 55 Cal.App.5th 858, 863.) The abuse of discretion standard is not a unified standard: "the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.)

"'In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citations.] Second, a "'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge."'" [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.'" (*People v. Strother* (2021) 72 Cal.App.5th 563, 571.)

### B.    No Prejudicial Abuse of Discretion

Here, the trial court found appellant "pose[d] an unreasonable risk of danger to public safety," which is a finding necessary to overcome the presumption in favor of recall and resentencing under section 1172.1, former subdivision (b)(2). The trial court reasoned that appellant had a "very lengthy criminal history that did increase in severity each and every time," and although he had served some time in state prison, the offenses were "very outrages [*sic*]," and based on his criminal history, he posed an unreasonable risk of danger to public safety. Despite this finding, the trial court proceeded to

8.

effectively resentence appellant by striking the invalid section 667.5, former subdivision (b), enhancements, and declining to strike any other enhancement or make any other adjustments to the original sentence.

The record is unclear as to what the trial court intended with respect to its finding that appellant posed an unreasonable risk of danger to public safety given the subsequent resentencing. On one hand, the trial court could have made the public safety finding, but declined to use that as a basis to deny recall and resentencing under section 1172.1 and proceeded to resentence appellant under that statute. On the other hand, the trial court may have proceeded to do what the prosecution had urged in its brief opposing resentencing under section 1172.1—i.e., found that appellant posed an unreasonable risk of danger to public safety, implicitly denied recall and resentencing under section 1172.1 for that reason, proceeded to grant recall and resentencing under section 1172.75 due to the prison prior enhancements the prosecution conceded are now invalid, and then resentenced appellant by striking the invalid prison prior enhancements and declining to alter any other portion of the sentence.

Despite this ambiguity, no matter how we view the trial court's order, no abuse of discretion is shown. First, there is substantial evidence to support the trial court's public safety finding within the meaning of section 1170.18, subdivision (c), sufficient to overcome the presumption in favor of recall and resentencing under section 1172.1, subdivision (b)(2). In making this finding, the trial court relied on appellant's extensive criminal history predating the current offenses, and the increasingly serious nature of his crimes that culminated in the armed robbery of a bank followed by a home invasion robbery where the appellant again utilized a weapon and threatened to kill one of the occupants.

Between 1983 and January 1989, appellant suffered convictions for 12 misdemeanor offenses, mostly related to drugs, but also for obstructing a peace officer, carrying a concealed weapon, and theft of personal property. In April 1989,

9.

appellant was convicted of second degree burglary. In June 1991, he was convicted of first degree burglary. In April 1993, appellant was again convicted of second degree burglary and drug possession. In May 1995, appellant suffered a felony conviction for taking a vehicle without consent; in April 1996, he suffered a misdemeanor conviction for obstructing a public officer; in May 1996 appellant failed to return to confinement (a felony). Finally, in February and June 2000, appellant suffered two convictions for second degree robbery, during one of which the use of a weapon was noted.

Appellant's four robbery convictions are all considered serious and violent crimes (§§ 667.5, subd. (c)(9), 1192.7, subd. (c)(19)). Fortunately, there is no indication any victims were physically harmed during these robberies, but the presence of weapons posed a heightened risk of fatal injury that foreseeably could have culminated in super-strike homicide offenses, especially the home invasion robbery in 2006. The trajectory of appellant's criminal history was increasing in seriousness, from misdemeanors to felony offenses, and from nonviolent offenses to serious and violent offenses that could have easily precipitated a homicide offense. Despite that appellant's current offenses had been committed almost two decades before the resentencing, appellant has since been confined to a very structured prison environment, but was still convicted of an in-custody offense in 2014 related to drugs.

While the trial court evidently gave this criminal history dispositive weight in articulating its public safety finding, there is no indication the trial court failed to consider other relevant factors, including appellant's age (58 at the time of resentencing), his current health conditions, which included appellant's self-report of colon cancer (without any medical evidence of prognosis or physical implications indicated), or the rehabilitation programming he has completed during his incarceration. These facts were included in appellant's brief filed with the trial court, and they were presented and argued by defense counsel at the December 2023 hearing. Thus, while the trial court did not expressly analyze these considerations in explaining its reasoning, we cannot presume

from the court's silence alone that it failed to consider them. In the absence of evidence to the contrary, we must instead presume the trial court properly exercised its discretion by considering all relevant factors. (See *Carmony, supra*, 33 Cal.4th at p. 378 [on silent record, court is ordinarily presumed to have correctly applied the law]; see also *People v. Lee* (2017) 16 Cal.App.5th 861, 867 ["If the record is silent" as to the court's awareness of its discretionary sentencing authority, we must presume the court understood the full scope of its discretion].)

It is notable that appellant was 58 years old at the time of resentencing and had been purportedly diagnosed with colon cancer in 2022 after having been treated for liver cancer; his current robbery offenses were committed 18 years ago, his prior strikes for robbery were committed 24 years ago; and he is currently serving two consecutive three-strike sentences of 25 years to life. These facts could support a contrary conclusion that appellant would *not* pose an unreasonable risk of danger to public safety were he resentenced. But an abuse of discretion is not established just because reasonable people might disagree about how to evaluate these facts in making a public safety finding under section 1172.1, subdivision (b)(2). (See *Carmony, supra*, 33 Cal.4th at p. 378 [whether reasonable people might disagree about whether to strike prior strike allegations does not establish an abuse of discretion]; see also *People v. Clair* (1992) 2 Cal.4th 629, 655 [facts which afford an opportunity for a difference of opinion do not establish an abuse of discretion].)

Appellant relies on *Nijmeddin v. Superior Court* (2023) 90 Cal.App.5th 77 (*Nijmeddin*) for the proposition that a generalized concern about a petitioner's ability to continue to commit crimes is insufficient to support a finding that a person poses an unreasonable risk of danger to public safety. In *Nijmeddin*, the court considered a section 1172.2 resentencing petition for compassionate release. The petition included documentation from CDCR's health care services director, explaining the petitioner had advanced incurable pancreatic cancer, biliary adenocarcinoma, and other comorbid

medical conditions. (*Nijmeddin, supra*, at p. 80.) The petitioner's life expectancy was less than one year, even with chemotherapy, which the petitioner had opted to forego. (*Ibid.*) The petitioner's primary care doctor testified that petitioner was in a wheelchair, could not get himself onto the exam table, and was "'barely able to get out of the chair.'" (*Id.* at p. 81.)

The trial court denied compassionate release, explaining that the petitioner was not bedbound, in a coma, or unresponsive. The court found the petitioner to be criminally sophisticated, and concluded he knew people and was able to use his mental capacity to commit offenses. (*Nijmeddin, supra*, 90 Cal.App.5th at p. 82.) The appellate court reversed, concluding the trial court had plainly abused its discretion. The trial court had made no findings as to the unreasonable risk of commission of a *super-strike* offense—in essence expressing nothing more than a generalized concern about the petitioner's ability to continue to commit crimes. (*Id.* at p. 83.) The court concluded the record lacked any substantial evidence the petitioner, who was severely physically incapacitated and "getting worse by the day," posed an unreasonable risk of danger to public safety. (*Ibid.*) Here, however, although appellant had been diagnosed with cancer at the time of the resentencing, there was no medical information provided about his prognosis or how it affects his physical abilities.[3] Absent that information, the cancer diagnosis did not necessarily ameliorate the likelihood appellant would commit a super-strike given his history of violent offenses.

Nevertheless, even if we were to conclude the trial court's public safety finding evidenced an abuse of discretion, the trial court nonetheless proceeded to resentence appellant, rendering any error at the threshold recall determination harmless. Here, because the trial court proceeded to resentence appellant—striking the invalid prison

---

[3]     The record contains an unsworn statement by appellant in support of his petition that doctors had told him that cancer would eventually end his life.

priors and declining to make any other discretionary changes to the sentence—any error with respect to the court's finding that appellant posed an unreasonable danger to public safety was not prejudicial. (See *People v. Avalos* (1984) 37 Cal.3d 216, 233 [to determine whether error in sentencing choice required remand, reviewing court must determine if ""'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error'"'].) "[T]he sentence ultimately imposed by the court [after granting recall] is left to [the court's] discretion without any further application of the presumption [in favor of recall and resentencing]." (*People v. Braggs* (2022) 85 Cal.App.5th 809, 820.) Thus, as explained in *Bragg*, where the trial court *in fact* recalls the sentence and resentences the petitioner, any purported failure by the court to apply the presumption in favor of recall and resentencing, or any purported lack of evidence to support a finding overcoming the presumption, is not prejudicial. (*Id.* at p. 819.)

As for the resentencing itself, without any affirmative indication to the contrary, we must presume the trial court understood the full scope of its resentencing authority and resentenced appellant in accordance with the law. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390 ["Absent evidence to the contrary, we presume that the trial court knew and applied the governing law."]; *People v. Myers* (1999) 69 Cal.App.4th 305, 310 [trial court is presumed to have considered all of the relevant sentencing factors].) In their briefs filed with the trial court, the parties thoroughly addressed whether any reductions in the original sentence should be made, including all the enhancements and the prior strike convictions—there was no suggestion by the parties anything less than a full sentencing was warranted upon recall. No objections were made at the hearing as to the manner in which the trial court resentenced appellant.[4] "'A party in a criminal case

---

[4] Even to the extent the trial court granted recall and resentencing under section 1172.75 rather than section 1172.1, both statutes require a full resentencing, and neither the parties' briefs filed before the trial court and arguments at the hearing, nor the court's statements at the hearing

may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial. [Citation.] The rule applies to "cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons .…"'" (*People v. Scott* (2015) 61 Cal.4th 363, 406.) The failure to object forfeited any appellate arguments the trial court abused its discretion with respect to its discretionary resentencing decisions.

## III. Custody Credits

"It is the duty of the court imposing the sentence to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section. The total number of days to be credited shall be contained in the abstract of judgment .…" (§ 2900.5, subd. (d).)

"Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts." (§ 2900.1.) "[W]hen a prison term already in progress is modified …, the sentencing court must recalculate and credit against the modified sentence *all actual time*

---

suggest a different understanding of the scope of the trial court's resentencing discretion. (See *People v. Garcia* (2024) 101 Cal.App.5th 848, 855, quoting *People v. Monroe* (2022) 85 Cal.App.5th 393, 402 ["'By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly "invalid" enhancements.'"]; see also §§ 1172.75, subd. (d)(2) [court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing], 1172.1, subd. (a)(1) [the defendant should be resentenced in the same manner as if they had not previously been sentenced], *id.*, subd. (a)(2) [upon resentencing, court shall apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to reduce disparity of sentences and to promote uniformity of sentencing].)

the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29 (*Buckhalter*).)

Upon resentencing, the trial court was required to recalculate appellant's actual custody credits. (*Buckhalter, supra*, 26 Cal.4th at p. 29; see § 1172.1, former subd. (a)(5).) The amended abstract of judgment issued in December 2023 reflects only the custody credits awarded at appellant's original sentencing in 2009. The matter must be remanded for the trial court to recalculate appellant's custody credits for actual time served pursuant to *Buckhalter*, and to amend the abstract of judgment accordingly.

## DISPOSITION

The matter is remanded for the trial court to calculate appellant's actual custody credits. The trial court shall prepare an amended abstract of judgment and forward a copy to the appropriate authorities. The trial court's December 2023 order resentencing appellant is otherwise affirmed.