Filed 6/11/25  P. v. Stables CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br><br>MICHAEL JAMES STABLES,<br>        Defendant and Appellant. | A170961<br><br>(City & County of San Francisco<br>Super. Ct. No. CRI20010968) |

After a jury found Michael James Stables guilty of voluntary manslaughter while personally using a deadly and dangerous weapon, the trial court sentenced him to an aggregate term of 12 years in prison — the upper term of 11 years for the manslaughter conviction and one year for the weapon enhancement.  On appeal, Stables argues his childhood and adult trauma were contributing factors to his offense, and the court abused its discretion by imposing the upper term.  He also contends the court improperly made dual use of the jury's weapon enhancement finding to impose the upper term.  We affirm.

## BACKGROUND

Stables's conviction arises from a single event that occurred during an early morning in October 2020.  He and his wife were sitting in their parked car in San Francisco — his wife sat in the front passenger seat, and he was in the rear.  C.S.J. and Orlando Echeagaray Rios, both drunk, walked towards

1

the car.  Using his elbow, C.S.J. broke the front passenger side car window and reached inside.  He then broke the rear right passenger window and walked away.  Stables grabbed a hatchet from his tool bag, exited the car, and chased after him.  Twice he swung the hatchet at C.S.J., who ran away. Stables ran back toward the car and struck Rios — who was moving away from the car — with the hatchet.  After Rios fell to the ground, Stables struck him again.  Stables got back into the car and told his wife to drive away. Rios, who had a large laceration on the back of his head, died.

An information was filed charging Stables with murder (Pen. Code, § 187, subd. (a), undesignated statutory references are to this code), and attempted murder (§§ 187, subd. (a), 664).  It also alleged the offenses were committed with a deadly and dangerous weapon (§ 12022, subd. (b)(1)), and that various circumstances aggravated both offenses.  The jury found him not guilty of murder but guilty of voluntary manslaughter.  It also found true several aggravating factors — that the crime involved great violence (Cal. Rules of Court, rule 4.421(a)(1)), use of a weapon (*id.*, rule 4.421(a)(2)), and the victim was particularly vulnerable (*id.*, rule 4.421(a)(3)).  The jury was unable to reach a verdict on the attempted murder charge, which the trial court subsequently dismissed.

In a sentencing brief, Stables requested the lower term of three years for his manslaughter conviction based in part on childhood and adult trauma, and one consecutive year for the weapon enhancement.  The brief recounted Stables's history — beginning at the age of 12 — of witnessing his mother's victimization in an abusive relationship.  Counsel also discussed Stables surviving a gunshot wound in May 2020, which required major surgery for abdominal and pelvic injuries and a colostomy bag.  Since being shot, counsel noted, Stables had repeated unwanted memories, hypervigilance, trouble

falling asleep, and strong feelings of shame and fear. Counsel argued, among other things, that Stables's psychological or childhood trauma was a factor in the commission of the crime. Attached to the sentencing brief was a letter from Stables's cousin, who has a degree in psychology. The cousin noted Stables experienced child abuse, which ultimately resulted in him being unhoused. According to the cousin, children growing up in these environments suffer from posttraumatic stress disorder, thus affecting their ability to reasonably react to life-threatening dangers. He also noted Stables "wholeheartedly believes that his actions were made in self-defense during an unprovoked attack."

In response, the prosecution requested the upper term of 11 years for the manslaughter conviction and a consecutive term of one year for the enhancement due to Stables's continuing pattern of violence — a felony conviction for assault with a deadly weapon and gang affiliation in 2012 and for assault again in 2013, battery with injury in 2018, and burglary in 2018 — in addition to the aggravating factors found true by the jury.

The trial court agreed with the prosecution. It explained, among other things, that there were several factors that aggravated the offense — Stables armed himself with a hatchet, attacked a victim who was vulnerable, and the offense involved great violence. The court expressly rejected the applicability of child abuse and trauma as mitigating factors and imposed the upper term of 11 years for the manslaughter conviction.

## DISCUSSION

Stables argues the trial court abused its discretion by concluding his psychological trauma and childhood abuse did not contribute to the commission of his offense. We disagree.

3

Where there are three possible terms of imprisonment for an offense, "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term." (§ 1170, subd. (b)(1).) Courts "shall order imposition of the lower term" if any of certain enumerated factors, such as psychological or childhood trauma, contributed to the commission of the offense. (*Id.*, subd. (b)(6)(A).) But imposing the lower term is not required. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.) A higher term is authorized if "the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6); *People v. Salazar* (2023) 15 Cal.5th 416, 426.) Determining whether a certain factor contributed to the commission of an offense is "a quintessential factfinding process" reviewed for substantial evidence — viewing evidence in the light most favorable to the judgment and presuming "in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Oneal* (2021) 64 Cal.App.5th 581, 589; *People v. Jones* (1990) 51 Cal.3d 294, 314.)

On this record, the trial court reasonably concluded psychological or childhood trauma did not contribute to the commission of the offense. During the trial, Stables repeatedly testified his acts were the result of trying to defend himself and his wife. Once C.S.J. broke the car windows, Stables believed he was being attacked and reached for "something scary or big" — the hatchet — to defend himself and his wife. Stables testified he had no particular intent in swinging at C.S.J. other than to "just get them away and . . . for us to be safe." He turned back towards Rios because "I wanted to go back to [my wife]," and "I felt . . . I was doing what I had to do for — to keep my wife safe." He testified his fears were real and genuine — he

4

believed his wife was being targeted, that she was in real danger, and he acted by swinging his hatchet at the attackers to ensure they would not pursue her. This testimony does not connect his prior trauma with his decision to chase after the men — both of whom were moving away from the car — and attack them with a hatchet.[1]

True, Stables's sentencing brief notes he survived a gunshot wound five months prior to his offense, resulting in hypervigilance, trouble falling asleep, and fear. It also contains counsel's statements recounting Stables's history of trauma — including witnessing his mother in an abusive relationship — ultimately resulting in Stables becoming unhoused. But *counsel's* statements do not constitute evidence of trauma and its effects. (*Muskan Food & Fuel, Inc. v. City of Fresno* (2021) 69 Cal.App.5th 372, 389–390.) And the probation department's presentence report, reviewed by the trial court, noted Stables never participated in mental health treatment or counseling, he described his current mental health as " 'Good,' " and he reported "no abuse" in his childhood home. And critically, counsel's assertion — without citation to anything in the record — that Stables suffers from hypervigilance and reactive responses to danger, even if credited, does not conclusively demonstrate Stables's past trauma was a contributing factor to the commission of this offense. Viewing the evidence in the light most favorable to the judgment, substantial evidence supported the court's finding that

---

[1] Stables did testify that, before he swung the hatchet at a prone Rios, his body "tensed up because I felt like . . . how I felt in the moment when I got shot." But he did not testify that feeling was connected to his decision to swing the hatchet again. And by that point, Stables had already chased after C.S.J. — swinging the hatchet twice at him — and returned and struck Rios as he was moving away from the car.

Stables's trauma and childhood abuse did not contribute to the offense and thus did not trigger the presumption for imposing the lower term.[2]

Stables next argues the trial court improperly made dual use of a fact — his use of a deadly weapon during his offense — to support his weapon enhancement and the imposition of the upper term. (*People v. Avalos* (1984) 37 Cal.3d 216, 233; *People v. Scott* (1994) 9 Cal.4th 331, 350 [prohibiting use of fact constituting element of offense to impose aggravated sentence].) This argument is forfeited. Stables concedes he failed to raise it at the sentencing hearing. (*People v. Saunders* (1993) 5 Cal.4th 580, 589–590 [appellate court will not consider erroneous rulings in the absence of an objection in the trial court].)

Forfeiture aside, any error is harmless because it is not "reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." (*People v. Price* (1991) 1 Cal.4th 324, 492; *People v. Lynch* (2024) 16 Cal.5th 730, 760, fn. 14 [applying *Price* prejudice standard where trial court bases sentencing decision on both proper and improper bases].) The trial court summarized Stables's criminal record as "extensive," beginning in 2012 with misdemeanor violations for resisting arrest, reckless driving, and being drunk in public, to felony offenses such as assault with force likely to produce great bodily injury with a gang enhancement, three different convictions for controlled substance with battery, possession of a firearm, and second degree burglary — some of which resulted in prior prison terms. Significantly, Stables does not challenge the court's reliance on his prior prison terms and convictions.

---

[2] We nevertheless acknowledge the tragic nature of this incident, and C.S.J.'s role in triggering it, which presumably explains why the jury acquitted Stables of murder and was unable to reach a verdict on the charge of the attempted murder of C.S.J.

Moreover, the court expressly found there were no mitigating factors, and Stables does not challenge the factual basis for the multiple aggravating factors supporting the upper term.  (§ 1170, subd. (b)(2) [authorizing upper term when justified by aggravating factors].)  On this record, it is not reasonably probable the court would have imposed a lower sentence.

## DISPOSITION

The judgment is affirmed.

_____

RODRÍGUEZ, J.


WE CONCUR:


_____

FUJISAKI, Acting P. J.


_____

PETROU, J.


A170961; *People v. Stables*