Filed 4/15/26  P. v. Ruelas CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDGAR RODRIGUEZ RUELAS,<br><br>    Defendant and Appellant. | 2d Crim. No. B339030<br>(Super. Ct. No. 2020007916)<br>(Ventura County) |

Edgar Rodriguez Ruelas appeals his conviction, by jury, of assault with the intent to commit rape, sodomy, or oral copulation against a person under 18 years of age (Pen. Code, § 220, subd. (a)(2), (count 1))[1]; two counts of assault with the intent to commit rape, sodomy, or oral copulation (§ 220, subd. (a)(2)), (counts 2 and 4)); genital penetration with a foreign object (§§ 289, subd. (a)(1)), 667.61, subd. (d)(4), (count 3)); and assault

---

[1] All statutory references are to the Penal Code unless otherwise stated.

with the intent to commit rape, sodomy, or oral copulation during the course of a burglary.  (§ 220, subd. (b), (count 5).)  With respect to counts 1, 2 and 4, the jury found true aggravating circumstances that the victims were vulnerable, the crimes involved planning, sophistication, or professionalism, and that appellant engaged in conduct indicating he was a serious danger to society.  (Cal. Rules of Court, rule 4.421(a)(1), (a)(3), (a)(8).)  It found untrue the allegation that these offenses involved a high degree of cruelty, viciousness or callousness.  (*Id.*, rule 4.421(b)(1).)  The trial court sentenced appellant to a total term in prison of 21 years plus 32 years to life.

Appellant contends the trial court erred by admitting evidence of uncharged acts he committed and pornography he accessed.  He contends the admission of this evidence violated Evidence Code sections 352, 1101 and 1108 as well as his right to due process of law.  We affirm.

*Facts*

Appellant assaulted five different women, all of whom were strangers to him.  Three of these assaults occurred on Ventura County hiking trails, two in early morning hours and one in the late afternoon, while each victim was hiking alone.  The other two assaults occurred inside apartments at night.  One victim was sleeping in her own bed, the other in her boyfriend's.  At trial, appellant admitted that he was the person who committed these assaults, but denied any intent to rape the victims.  Instead, his counsel argued that appellant "has an underwear fetish, which became an underwear obsession, which got out of his control and it led to him grabbing people and going into homes, but not to commit rape."

2

The Charged Offenses.  Appellant was married to A.S. from 2006 to 2018.  During their marriage, appellant often went hiking alone, usually late at night or very early in the morning.  He would wear a sweatsuit, e.g., matching black sweatpants and a sweatshirt, and a ski mask that covered his face.  Appellant sometimes wore a beanie and neck warmer or gaiter that could be pulled up to cover his face.

Count 1.  In March 2020, then 16-year-old Y.C. went for a hike in Oak Park at about 3:30 p.m.  She took her ukulele, a book, a notebook and her cell phone.  Y.C. walked to a clearing where there was a tree with a swing.  Along the way, she heard some rustling in the bushes.  After reaching her destination, Y.C. heard the rustling again.  About 5 minutes later, she decided to walk back home.  As she was walking, appellant jumped out of the bushes and ran out toward her.

Appellant put his hand over Y.C.'s mouth.  She bit it.  He pushed Y.C. to the ground as she screamed for help.  Once she was on the ground, Y.C. hit appellant in the shin with her ukulele.  Appellant backed up, giving Y.C. the chance to get up on her feet.  The two stood facing each other.  Y.C. pleaded with appellant to not hurt her.  He told her to run away and she did.

Count 2.  In April 2019, Jane Doe went hiking alone in Oak Park at about 5:40 p.m.  She was carrying a backpack, a jacket and an umbrella for shade.  After hiking for about 40 minutes, she turned around to walk back to her car.

After turning around, Jane Doe saw appellant, who was dressed in a black sweatsuit and ski mask, running toward her.  Doe stepped backwards.  Appellant put a hand over her mouth and grabbed her umbrella with his other hand.  Doe tried to run backwards but stumbled and fell to the ground.  Appellant

3

got on top of her, holding her arms down. He asked Doe where her cell phone was. Doe was twisting around, trying to get appellant's hand off her mouth. He told her several times to be quiet. She yelled at him to go away.

The two struggled as appellant pulled at Doe's clothes and Doe tried to remove his ski mask. At one point, Doe was able to get back on her feet and was almost standing when appellant used the umbrella to push her into the hillside. Doe told appellant that people knew where she was and would be coming. He grabbed Doe's backpack and ran down the trail. Doe lost sight of appellant at a switchback. She testified that she did not believe appellant was trying to sexually assault her. She believed he was trying to steal her cell phone.

Count 3. In October 2017, B.T. visited her then boyfriend, Ian, at his ground floor apartment in Thousand Oaks. The two went to bed at about midnight. They locked the apartment's front door, but left the sliding glass door open about two feet. B.T. wore her ripped jeans and a cropped t-shirt to bed.

B.T. woke up at about 3 a.m. to find a man she did not know standing in front of her. Appellant approached B.T., putting one hand over her mouth and the other on her stomach. He quickly unzipped her jeans and put his hand down her pants, touching her clitoris. B.T. was scared and tried to move, pushing her body against Ian's, and yelling his name. Ian woke up to see appellant moving toward the sliding glass door. Both men went outside, onto the patio. They briefly struggled. When Ian saw appellant reach for his pocket, he thought appellant might stab him so he backed off. Appellant fled.

Count 4. H.H., a woman, went hiking alone in Wildwood Canyon Regional Park at about 5:45 a.m. one day in

4

July 2017. After she had been walking for about 10 minutes, she saw appellant walking toward her. H.H. began to feel unsafe, so she turned onto another path which would lead her back to the parking lot. As she was walking, H.H. again noticed appellant behind her on the trail. She told appellant that he was scaring her. He shook his head and then pushed her to the ground. Appellant got on top of H.H., pushed up her shirt and touched her breasts. He tried to pull H.H.'s pants down. As they struggled, H.H. told appellant that she had called her husband and the police, and both were on their way to help her. Appellant picked up H.H.'s cell phone and ran away.

Count 5. In June 2017, B.P. lived with her roommate in a first-floor apartment in Thousand Oaks. The apartment had a sliding glass door which they left unlocked one night.

B.P. was awakened at about 4:20 a.m. because she heard her bedroom door creaking. It was very dark and B.P. was disoriented. Then she saw the shadow of a large man enter her room. B.P. asked, "Who are you?" Appellant put his hand over B.P.'s mouth and said, "shh." B.P. moved to the left side of her bed. She was able to stand up and walk toward the bedroom door. Appellant grabbed B.P.'s arms and pushed her back toward the bed. B.P. screamed for her roommate who woke up and went into the apartment's hallway. Appellant tried to leave B.P.'s room and escape through the apartment's front door. The roommate grabbed his sweatshirt, thinking she would be able to hold him until police arrived. He broke free, unlocked the door and left the apartment. No property was missing and nothing in the apartment seemed out of place.

Uncharged Offenses. In addition to evidence of the offenses themselves, the prosecution introduced evidence that

5

appellant assaulted L.R., his then mother-in-law, three times. On another occasion, while working at a hotel, appellant entered a guest room and rummaged through a drawer in which pre-teen girls were storing their underwear. These events occurred between four and nine years before the charged offenses.

The first two assaults on L.R. occurred in 2006, while appellant and his then wife, A.S., were staying with L.R. in her two-story condominium in Mammoth Lakes. The condominium's bedrooms were located on the lower floor, which was much colder than the upper floor. As a result, all three adults slept on mattresses on the living room floor, where it was warmer. On the first occasion, L.R. woke in the middle of the night, because she felt appellant touching her labia. When L.R. woke up and moved, appellant returned to where he had been sleeping without saying anything. The next night, L.R. again awoke to appellant touching her labia. She kicked him and he retreated.

The third occasion occurred about three years later, when L.R. was living in Crowley and A.S. and appellant were living in Mammoth Lakes. Early one morning, A.S. and appellant arrived at L.R.'s home with breakfast. They ate, A.S. left for work and appellant stayed behind.

L.R. felt uncomfortable being alone with appellant. Eventually she told him that she was going back to bed. She closed her bedroom door and fell back asleep. L.R. believed appellant had left. At around 12:15 p.m., L.R. woke up because she heard a knock on her front door. When she sat up, she saw appellant was inside her bedroom. He was on the floor at the foot of the bed, on his hands and knees, facing in the direction of L.R.'s bed. She asked appellant what he was doing. He said he

6

was looking for his shoes. Appellant was already wearing shoes. He got up and left quickly, through the back door.

About four years after this incident, appellant was working at a hotel in Mammoth Lakes. One family staying at the hotel consisted of twin 12-year-old girls and their parents. The whole family went to the hotel's hot tub. After a few minutes, the mother returned to their room. She opened the door to find appellant inside, looking into the drawer where her daughters stored their underwear and pajamas. Appellant's pants were unbuckled and unzipped but his penis was not exposed and he was not masturbating. When confronted by the mother, appellant ran out of the room without saying anything. In a tape-recorded interview with police, appellant explained that he was fantasizing about underwear and went into the room for that reason.

Searches for and Access to Pornography. A forensic examiner testified that appellant used two mobile phones to search for and access pornography. The examination of his mobile phones did not disclose any searches for or access to child sexual abuse materials. Some of the search terms appellant used included "incestuous-type of relationships," "spying on women or voyeurism on women engaged in sexual acts," "hidden camera," "spying in the dressing room," "young teen forced," and sleeping, drugged or helpless women. Appellant also searched for pornography relating to hiking and to "sexual acts committed during home invasions." The forensic examiner did not find evidence of a focus on pornography relating to underwear fetishes.

Appellant also used his phones to search for other types of pornography and for numerous "innocuous items,"

including social media sites, real estate listings, and retail stores. The forensic examiner prepared an exhibit listing searches for pornography made, and websites visited on appellant's phones. This exhibit reflected less than 4 percent of the phones' search history.

*Standard of Review*

Appellant's sole contention is that the trial court erred when it admitted evidence of the uncharged incidents and pornography. We review the trial court's evidentiary rulings under the deferential abuse of discretion standard. (*People v. Thompson* (2010) 49 Cal.4th 79, 128.) The trial court's decision may not be disturbed unless it was arbitrary, capricious or patently absurd and resulted in a miscarriage of justice. (*People v. Aguirre* (2025) 18 Cal.5th 629, 699-700; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

*Discussion*

Invited Error. Respondent contends any error in admitting evidence relating to pornography was invited because appellant's trial counsel withdrew the objection to its admission. Initially, counsel argued that appellant's searches for and use of pornography were not relevant because the types of pornography were too diverse to support an inference that he intended to commit sexual assault. At the pre-trial hearing, however, counsel withdrew that objection. Counsel stated, "[A]t this point if the Court is going to let in the pornography, I am going to ask to admit all of the pornography. Because I think that it shows that he doesn't have the specific intent . . . ." Counsel later made a similar argument to the jury, noting that it could not infer appellant's intent from the pornography because the prosecution showed them only the small percentage of material used by

8

appellant that fit the prosecution's narrative. She further argued there was no evidence that watching pornography leads to sexual assault.

Invited error precludes a party from asserting on appeal an error that was induced by the party's own deliberate, tactical decisions and conduct. (*People v. Avalos* (1984) 37 Cal.3d 216, 228; *People v. Wickersham* (1982) 32 Cal.3d 307, 333, disapproved on other grounds, *People v. Barton* (1995) 12 Cal.4th 186, 200.) Here, appellant stipulated to the pornography on the theory that the types of pornography appellant searched for and accessed were too broad to show an intent to commit sexual assault. The choice was a tactical one and any error was therefore invited.

Uncharged Acts. Appellant contends evidence of his prior, uncharged assaults against L.R., his conduct in the Mammoth Lakes hotel room and his pornography use was inadmissible under Evidence Code sections 352, 1101, subdivision (b), and 1108. He further contends admission of the evidence violated his right to due process. There was no error.

Evidence Code section 352 grants the trial court broad discretion to exclude otherwise relevant evidence where its probative value is substantially outweighed by the probability "that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*Ibid*.) The prejudice referred to here is not the prejudice or damage that results from probative evidence. Instead, "evidence is considered unduly prejudicial if it tends to evoke an emotional bias against the defendant as an individual and has a negligible bearing on the issues." (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1091.) Section 352 permits the exclusion of evidence that

9

encourages "''''''prejudging' a person or cause on the basis of extraneous factors. . . .''''''" (*People v. Bell* (2019) 7 Cal.5th 70, 105.)

Evidence that the defendant in a criminal case committed an uncharged crime, tort or other act may be admissible to "prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, . . .) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) The degree and nature of similarity between the uncharged misconduct and the charged offense determines whether the uncharged misconduct is relevant to demonstrate one of the enumerated facts. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) "The least degree of similarity . . . is required in order to prove intent. . . . In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance." [Citations.]'" (*Ibid.*)

Where the defendant is accused of a sexual offense, evidence that he or she committed another sexual offense "is not made inadmissible by [Evidence Code] [s]ection 1101, if the evidence is not inadmissible pursuant to [Evidence Code] [s]ection 352." (Evid. Code, § 1108.) This statute "authorizes the admission of evidence of a prior sexual offense to establish the defendant's propensity to commit a sexual offense, subject to exclusion under Evidence Code section 352." (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286 (*Lewis*).) Evidence of prior bad acts that is properly admitted under Evidence Code sections 1101, subdivision (b) and 1108, does not violate the defendant's right to

10

due process. (*Estelle v. McGuire* (1991) 502 U.S. 62, 75; *People v. Dworak* (2021) 11 Cal.5th 881, 900.)

Here, appellant's defense at trial was that he lacked the intent to sexually assault his victims. Evidence of his prior sexual assaults and pornography use was admissible to show that he attacked his victims with the intent to rape or digitally penetrate them. For example, evidence that appellant sexually assaulted his mother-in-law by touching her labia as she slept supports the inference that he intended to forcibly digitally penetrate each of his sleeping victims rather than simply to physically assault them. The same holds true for appellant's hiking victims. Appellant's sexual assaults on L.R. demonstrate his propensity to commit that offense, supporting the conclusion that his assaults on the hikers were sexual in nature. (*Lewis, supra,* 46 Cal.4th at p. 1286.)

We reach the same conclusion with respect to evidence of appellant's pornography searches and use. His searches for and use of materials depicting the sexual assault of sleeping women and hikers support the logical inference that he was interested in those topics. That interest, in turn, supports the inference that he intended to commit a sexual assault, rather than a simple physical assault when he attacked women in similar circumstances.

The trial court also properly exercised its discretion when it concluded this evidence was not inadmissible under Evidence Code section 352. Appellant's assaults on L.R. were substantially similar to his assaults on B.T. (count 3) and B.P. (count 5). The conduct was not significantly more violent, invasive or inflammatory than the charged offenses. Similarly, the pornography searches indicated an interest in the subjects of

11

sleeping and hiking women, but not in child abuse or other subjects that were more inflammatory or violent. Because the uncharged acts were similar in critical respects to the charged offenses, that evidence was not likely to evoke an emotional bias against appellant or to encourage the jury to base its verdict on extraneous factors. There was no error.

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

12

Anthony J. Sabo, Judge

Superior Court County of Ventura

_____

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.